UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**AMANDA ARNOLD,**
  Plaintiff,          Civil Action No.: 17-10432-DJC

**VS.**

**THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY,**
  Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION IN LIMINE TO PRECLUDE
<u>EVIDENCE OF REGULATORY AND STANDARD VIOLATIONS</u>**

 Now comes the Defendant, the Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (hereinafter the "Steamship Authority"), in the above captioned civil action, by and through its undersigned counsel, Clinton & Muzyka, P.C., and hereby submits its Memorandum in Support of its Motion In Limine to Preclude the Evidence of Regulatory and Standard Violations pursuant to Fed.R.Evid. 401, 402 and 403.

**BACKGROUND**

 Plaintiffs will seek to introduce perceived violations of the following standards and regulations at trial:

1. Americans with Disabilities Act (ADA)

2. American National Standards Institute (ANSI)

3. National Fire Protection Association Standards

4. Massachusetts Building and Architectural Code

 The foregoing codes and standards are referenced in the reports of C.R. Cushing & Co., Inc. and Michael Panish. ***See Cushing Report, attached hereto in Exhibit 1 and***

***Panish Report, attached hereto as Exhibit 2.*** There is no opinion in Cushing's report establishing that the foregoing regulations and standards are actually applicable to a passenger vessel inspected by the United States Coast Guard, such as the M/V EAGLE. ***Id.*** The truth is that these regulations and standards are not applicable to the design and construction of USCG inspected passenger vessels. ***See Van Hemmen Report, attached hereto as Exhibit 3.***

At all material times, the M/V EAGLE was operating pursuant to its Certificate of Inspection issued by the United States Coast Guard. ***See Certificate of Inspection attached hereto as Exhibit 4.*** At no time were the foregoing codes and standards applicable to the M/V EAGLE.

Because the foregoing codes and standards do not apply to the M/V EAGLE, any evidence of their violation should be precluded *in limine* because they are irrelevant and will more likely than not confuse the jury as to the appropriate standard of care.

## ARGUMENT

### I.   APPLICABLE STANDARD OF CARE

Under the General Maritime Law, a vessel owner is not the insurer of the passenger's safety, and only owes passengers a duty of ordinary care under the circumstances. *Muratore v. M/S SCOTIA PRINCE,* 845 F.2d 347, 353 (1st Cir. 1988); *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959). This duty requires vessel owners/operators to not negligently injure passengers and to warn them of any dangers of which the vessel owner knows or should know. *Kermarec,* 358 U.S. at 625; *Beard v. Norwegian American Lines,* 900 F.2d 71 (6th Cir. 1990). The plaintiff has the burden of proving both (1) breach of this duty, and (2) that the breach was the proximate cause of the plaintiff's injury. *Keller v. U.S.,* 38 F.3d 16, 25 (1st Cir. 1995) (citing

*Bjaranson v. Botelho Shipping Corp.,* 873 F.2d 1204 (9th Cir. 1989); *Evans v. Nantucket Cmty. Sailing, Inc.,* 582 F.Supp.2d 121, 137 (D.Mass.2008) (quoting *Canal Barge Co., Inc. v. Torco Oil Co.,* 220 F.3d 370, 376 (5th Cir.2000)).

When considering standards and customs as evidence of negligence, relevance is not enough. "Evidence of custom *within a particular industry, group, or organization* is admissible as bearing on the standard of care in determining negligence." *Whelan v. Royal Caribbean Cruises Ltd.,* No. 1:12-CV-22481-UU, 2013 WL 5595938, at *4 (S.D. Fla. Aug. 12, 2013) (quoting *Muncie Aviation Corp. v. Party Doll Fleet, Inc.,* 519 F.2d 1178, 1180–81 (5th Cir.1975) (applying federal law). "The purpose of admitting such evidence is to show the ordinary practice." *Id.*

Here, the Plaintiff mentions several industry standards and guidelines that are not adopted or utilized in the marine industry and do not apply to the injury at issue. Evidence thereof for purposes of liability, therefore, should be precluded.

**II.     PLAINTIFFS' PROFERRED REGULATIONS AND STANDARDS.**

Plaintiffs seek to modify the standard of care by improperly introducing evidence of inapplicable regulations and standards to the M/V EAGLE. Evidence of a regulatory violation is only relevant on the issue of liability if (1) the regulation was breached, (2) the violation is applicable or relevant, i.e. "sufficiently related," to the casualty, and (3) the breach of the legal obligation "naturally and logically" leads to the conclusion that the breach caused the injury. *See Poulis-Minott v. Smith,* 388 F.3d 354, 364, 2004 AMC 2721 (1st Cir. 2004). Evidence of regulatory violations, of course, is inappropriate when the Plaintiff fails to demonstrate that they actually apply the vessel. *See Cordes v. M/V BALDOCK,* 2013 WL 1282842 at *6, 2013 AMC 1005 (D. Mass. March 29, 2013). To be sure, a plaintiff may not invoke evidence of a statutory or regulatory violation unless it is

both applicable and designed to prevent the same type of injury form the same class of persons as Plaintiff. *Phillips Petroleum Co. v. Stokes Oil Co.,* 863 F.2d 1250, 1994 AMC 601 (6th Cir. 1998). Because the foregoing regulations and standards do not apply to the Vessel, any evidence of their violation or perceived violation should be precluded *in limine* as irrelevant.

1. **ADA Standards**

Mr. Cushing states "46 CFR Part 39 ferries and passenger vessels operated by public entities are covered by ADA." He then references ADA Standard 404.2.8.1, which recommends at least a five [5] second closing speed for doors fitted with door closures. Nowhere in Mr. Cushing's opinion does he state that this ADA standard is actually required by the Americans with Disabilities Act with respect to the M/V EAGLE. When reviewing these standards, moreover, it appears that they only apply to "newly constructed buildings and facilities" on land. ***See ADA Standard 201 and 401 attached hereto as Exhibit 5.***

Plaintiffs experts, to be sure, fail to note that there are ***no ADA Standards applicable to Passenger Vessels such as the EAGLE that require a five second closing speed***. The land based ADA Standard 404.2.8.1 simply does not apply. Different and more flexible standards have been adopted for Passenger Vessels. ***See ADA Passenger Ferry Standards, attached hereto as Exhibit 6.***

The Department of Transportation has adopted different standards applicable to passenger ferry vessels that can be found in 49 CFR Part 39. The purpose of these standards, to be sure, is to prohibit "owners and operators of passenger vessels, including U.S. and foreign flag vessels, from discriminating against passengers on the basis of disability . . ." 49 CFR § 39.1. In other words, the standards are not about safety; they are about accessibility. Recognizing that application of the land based standards found in ADA

Standard 404.2.8.1 for new building construction will be difficult in the marine context, the Department of Transportation sets no such stringent requirements in 49 CFR Part 39. Rather, passenger vessel owners are required to provide reasonable assistance where requested to disabled passengers. *See* 39 CFR §§ 39.81 through 39.95. The ADA provisions with respect to Passenger Vessels became effective in November 2010. 49 CFR § 39.13.

Here, the Plaintiff is not a disabled person and there is no obligation for the Steamship Authority to provide her with reasonable accommodation as a disabled person pursuant to the ADA. Plaintiff falls outside the scope of the persons protected by ADA requirements and evidence of such perceived standard non-compliance cannot be admitted to prove negligence. No regulatory or standard violation, to be sure, has occurred because the standards simply do not apply. The land-based standards required for new construction under the ADA do not apply the M/V EAGLE, a passenger vessel. Such standards were deliberately left out of 49 CFR Part 39 and do not form the basis any known marine standard that applies. Cushing himself, a naval architect, does not opine that these land-based ADA standards are applicable to the M/V EAGLE.

Further the purpose of the ADA requirement is for accessibility and cannot be commingled with what is considered safe for a bipedal human ambulating with two functioning legs transiting an ordinary bathroom door. The manufacturer of the door closer at issue, Dorma, indeed recommends a 3-6 second closure for the door. There is no evidence that will be presented at trial that this standard was violated. The ADA has a more stringent 5 second minimum standard most likely to allow sufficient time for a person with a wheelchair or other disability to have access. There is nothing to suggest a 3 second standard to be unsafe for a fully functioning person.

**2. American National Standards Institute.**

ANSI Standards are published by the American National Standards Institute, a non government organization. The foregoing standards are not applicable to the design and construction of USCG inspected passenger ferry vessels. Indeed, Plaintiff's experts, Cushing and Panish, provide no opinion that these standards are actually applicable. Because there is no evidence that ANSI standards are binding or form the basis of any industry standard in the design and construction of vessels, and particularly passenger inspected vessels such as M/V EAGLE, it should properly be excluded from evidence. *See Cordes*, 2013 WL 1282842 at *6; *Whelan v. Royal Caribbean Cruises, Ltd.,* 2013 WL 5595938 (S.D. Fla. August 12, 2013).

Further, it appears that ANSI simply adopts the more stringent ADA standard requiring a minimum of five seconds, and it is clear that it is aimed to provided better accessibility for disabled persons and is not related to safety.

**3. National Fire Protection Association Standard 80 and Fire Life Safety and Accessibility Codes.**

The National Fire Protection Association is a land-based standard that does not apply to the M/V EAGLE. The NFPA standards are routinely excluded from evidence of the appropriate standard of care in maritime cases because this is not an industry standard in vessel design or construction. *See Whelan v. Royal Caribbean Cruises, Ltd.,* 2013 WL 5595938 (S.D. Fla. August 12, 2013) (precluding evidence of NFPA Life Safety Code as inapplicable to passenger vessels). In this case, Dr. Cushing opines that Defendant violated Standard 80 of the NFPA because an annual inspection was not performed within this standard. The standard, however, has nothing to do with door closing safety, but whether the fire door acts as a fire door. Because the Plaintiff is not alleging burns, this standard does not apply.

### 4. Massachusetts Architectural Regulations.

The Massachusetts Architectural Regulations contained in 521 CMR have nothing to do with the design and construction of passenger vessels.  Similarly, there is no evidence that a violation of these regulations have anything to do with the Plaintiff's claimed injury.

Accordingly, the Court should properly exclude any evidence thereof at trial. *Whelan v. Royal Caribbean Cruises, Ltd.,* 2013 WL 5595938 (S.D. Fla. August 12, 2013).

### 5. United States Coast Guard Regulations.

In his report, Mr. Panish opines that "[d]oors identified as fire doors aboard vessels must be self-closing and capable of achieving a positive latch."  Although it is conceded that USCG regulations apply, the one referenced by Mr. Panish has nothing to do with this case.  Indeed whether the door achieves a positive latch or not is immaterial to Plaintiff's injury where she placed her fingers between the door and the hinge side jamb.

This case is similar to *Whelan v. Royal Caribbean Cruises, Ltd.,* 2013 WL 5595938 (S.D. Fla. August 12, 2013).  In that case, the Plaintiff sought to introduce several inapplicable land based building standards to show evidence of negligence in a passenger injury case, including, without limitation, those under the ADA, NFPA and inapplicable land based building codes.  The Southern District of Florida properly excluded evidence of these inapplicable land based standards, as they were not applicable to design, construction and maintenance of passenger vessels.

## CONCLUSION

For the foregoing reasons, the above regulations and standards do not apply to the design and construction of the M/V EAGLE.  Plaintiff's experts have failed to opine as

such in their reports.[1]  Accordingly, any evidence of the foregoing regulations and/or standards should properly be excluded from evidence.  The appropriate standard of care is ordinary negligence under the circumstances.  Inclusion of the foregoing regulations and standards into evidence will only serve to confuse the jury as to the appropriate standard of care resulting in manifest injustice and prejudice to the Defendant.  Defendant, indeed, cannot be asked *ex post facto* to comply with standards that have never heretofore been utilized in vessel construction and maintenance.

By its attorneys,
**CLINTON & MUZYKA, P.C.**
*/s/ Olaf Aprans*
_____
**Thomas J. Muzyka**
**BBO NO: 365540**
**Olaf Aprans**
**BBO NO: 670434**
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
(617) 723-9165
Fax#: (617) 720-3489
Email: oaprans@clinmuzyka.com

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.2, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 17, 2018**.**

---

[1] *Further, it appears that Mr. Panish has no maritime qualifications whatsoever, which is addressed in the Daubert motion of even date hereof.*

*/s/ Olaf Aprans*
_____
Olaf Aprans