UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**AMANDA ARNOLD,**
 Plaintiff,

Civil Action No.: 17-10432-DJC

VS.

**THE WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY,**
 Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF PANISH**

Now comes the defendant, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (hereinafter the "Steamship Authority"), in the above captioned civil action, by and through its undersigned counsel, Clinton & Muzyka, P.C., and hereby submits its Memorandum in Support of its Motion In Limine to Preclude the Testimony of Panish pursuant to Fed.R.Evid. 702.

**INTRODUCTION**

Plaintiff seeks to introduce at trial the expert testimony of Michael Panish, a licensed contractor and self-titled door expert ("Panish"). Because Panish is unqualified and because his opinion is unreliable, irrelevant and will not be helpful to the trier of fact (in fact it is more likely to confuse the jury), this Court should properly exercise its gatekeeping function under Fed.R.Evid. 702 and preclude Panish from testifying at trial.

## **FACTS**

The Plaintiff Amanda Arnold claims she broke two of her fingers when she inserted them between the hinge side door jamb and the woman's bathroom door onboard the M/V EAGLE on or about September 30, 2016.  She indicated in her testimony that the vessel rolled prior to her grasping this door jamb.

Almost immediately following the incident, Plaintiff's counsel served the Steamship Authority with a Litigation Hold Request letter instructing the Steamship Authority, under threat of sanctions for spoliation, not to do anything to modify the door and door closer at issue.  Accordingly, the door and closer was not adjusted thereafter, albeit used by passengers. Plaintiff did not engage experts to inspect the door and closer until over one year later on December 29, 2017.  ***See Litigation Hold Request Letter, attached hereto as Exhibit 2.***

At her deposition, the Plaintiff did not identify anything wrong with the door that caused her injury.  Accordingly, her attorneys hired Panish to render an opinion in an attempt to find liability.  Panish attempts in vain to do this, and provides an expert report dated February 2, 2018.  ***See Panish Report, attached hereto as Exhibit 1.***  In that report, Panish provides the following opinions:

1. That standards promulgated under the Americans with Disabilities Act ("ADA") and the American National Standards Institute ("ANSI") set forth a five [5] second minimum time for door closure.

2. ADA and ANSI standards require a force not to exceed five [5] pounds.

3. That the Massachusetts Building Code requires doors to close in six [6] seconds.

4. That Dorma "does not endorse the use of this closer in a marine environment."

5. That USCG Regulations require the door to reach a positive latch.

6. There is no evidence that the door closer was maintained prior to the September 30, 2016 accident.

7. When the door was tested on December 29, 2017, it slammed with a force of 126 pounds and closed from 1.5 to 2 seconds.

8. The door closer was not functioning and was out of adjustment on December 29, 2017.

9. There is no record in the maintenance system that inspection of door closers ordered on 13 January 2016 was carried out.

10. If a door closes too quickly, it is possible that persons may be struck by a slamming door.

11. National Fire Protection Association Standard 80 requires an annual inspection of fire doors.

12. The Steamship Authority does not carry out annual inspections as required by NFPA Standard 80 or as recommended by the manufacturer.

*Panish Report, Exhibit 1.*

Panish's expertise appears to be limited to providing expert testimony and nothing further. *See Panish Website, attached hereto as Exhibit 3.*

## ARGUMENT

**I.   STANDARD FOR ADMITTING EXPERT OPINIONS.**

The admissibility of expert testimony is governed by Fed.R.Evid. 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. This rule places the district court in the position of a "gatekeeper" with respect to expert evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). Rule 702 assigns to the district court "the task of

ensuring that an expert's testimony both rests on a <u>reliable</u> foundation and is <u>relevant</u> to the task at hand." *Id.* at 597 (underscoring our emphasis). The Court's role is also to determine whether the expert possesses some specialized knowledge such that his or her testimony will actually be <u>helpful</u> to the trier of fact. *Id.* at 590-91.

The burden of proving that an expert's opinion is admissible remains on the proponent of the evidence. *U.S. v. Monteiro,* 407 F.Supp.2d 351, 356 (D. Mass. 2006) (citing *Daubert,* 509 U.S. at 593 n. 10, 113 S.Ct. 2786; *Moore v. Ashland Chem., Inc.,* 151 F.3d 269,276 ("The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable.").

**II.     PANISH'S OPINION IS NOT RELEVANT OR HELPFUL.**

"The ultimate purpose of the *Daubert* inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." *Hochen v. Bobst Group, Inc.,* 290 F.3d 446, 452 (1st Cir. 2002) (quoting *Cipollone v. Yale Indus. Prods.,* 202 F.3d 376, 380 (1st Cir. 2000)). Rule 702, to be sure, requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert,* 509 U.S. at 591-92 (quoting Fed.R.Evid. 702). The first step of the *Daubert* inquiry pertains to relevance: to be admissible, an expert's testimony must have a "valid ... connection to the pertinent inquiry." *Cipollone,* 202 F.3d at 380 (quoting *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786). The Supreme Court has described this consideration as one of "fit," *Daubert,* 509 U.S. at 591, 113 S.Ct. 2786 (quoting *United States v. Downing,* 753 F.2d 1224, 1242 (3d Cir.1985)), explaining that expert testimony not relating to an issue in the case "is not relevant and, ergo, non-helpful." *Id.* (quoting 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 702[02], pp. 702–18 (1988)).

In this case, Panish's testimony is not relevant or helpful to the trier of fact because it has nothing to do with the cause of Plaintiff's alleged injuries:

- **Speed/Force:** Panish opines that the door at the time of his December 29, 2017 inspection closed too quickly and with too great a force.[1] The Plaintiff placed her fingers between the hinge side jamb and the door, and would have suffered injury regardless of the speed and force. There is no evidence that a slower speed or smaller force would have prevented Plaintiff's injury, and Panish does not explain how a slower speed or lesser force would have prevented the injury. On the contrary, had the door closed faster on the date of the incident, then Plaintiff would have had less time to place her fingers in this location.[2]

- **Maintenance:** Panish provides several comments about the Steamship Authority's maintenance practices, commenting that Steamship Authority employees delay maintenance on doors, are not trained on door closers, do not quantify the appropriate closing speed, do not conduct annual inspections and do not bring in third party specialists to inspect door closers onboard Steamship Authority vessels. The maintenance comments concern mostly doors and inspections that are not at issue in this case. Even if we are to take Mr. Panish's opined shortcomings on the Steamship Authority's maintenance practices as true, moreover, there is no opinion or fact that connects these perceived shortcomings to the cause of the injury. There was no outstanding work order, maintenance request or defect noted about this door and door closer at the time of the injury.

- **Latch:** The fact that the door did not achieve a positive latch at the time of the inspection has no bearing on the cause of the incident.

In essence, Panish provides an opinion listing every possible defect with the door that conjecture can provide under the foregoing circumstances. What Panish's opinion ultimately lacks, however, is the connection between these alleged defects and Plaintiff's injury. Nowhere does Panish explain how the above-claimed defects caused Plaintiff's injury and there will be no evidence at trial that fills this essential gap. Accordingly, Panish's opinion is not helpful to the jury and should accordingly be excluded.

---

[1] This inspection, conducted over a year following the incident and without any adjustments made to the door is irrelevant and prejudicial because it is too far removed from the accident. Please see *Memorandum in Support of Motion in Limine to Exclude all evidence of December 29, 2017 Inspection* filed of even date herewith.

[2] If the door closed slower than the ADA 5 second minimum, indeed, the undersigned would not be surprised if someone like Cushing argued that the door was closing too slowly, manifesting the "root cause" of the injury.

This case is similar to *Cipollone v. Yale Indux. Products, Inc.,* 202 F.3d 376 (2000). In that case, the plaintiff sought to introduce the testimony of an expert opinion concerning a gap between a moving and fixed handrail in a lift. This opinion was properly excluded because the expert failed to provide an opinion how this alleged defect actually caused the injury:

> Because Schofield [the expert] described a shearing hazard that did not cause Cipollone's injury, and Cipollone [plaintiff] described an injury that did not result from the shearing hazard Schofield described, Schofield's testimony is irrelevant and properly was excluded under *Daubert*.

*Cipollone,* 202 F.3d at 380. Just as it was in *Cipollone*, Plaintiffs offer no actual causal connection between the opined defects and the injury. Accordingly, Panish's opinion is inadmissible.

### III. PANISH'S SUGGESTED LEGAL OPINION IS INADMISSIBLE.

"An expert may not 'assist' the jury by expounding upon the law, however, because to do so would intrude upon the province of the trial judge." *Ji v. Bose Corp.,* 538 F. Supp. 2d 354, 357-58 (D. Mass. 2008) (quoting *Nieves-Villanueva v. Soto-Rivera,* 133 F.3d 92, 100 (1st Cir.1997)); *United States v. Mikutowicz,* 365 F.3d 65, 73 (1st Cir. 2004). "The line between testimony regarding what the law requires and testimony describing how an industry practice typically operates is not always clear. The latter form of testimony is admissible." *Ji,* 538 F.Supp.2d at 357-58 (citing *Levin v. Dalva Bros. Inc.,* 459 F.3d 68, 79 (1st Cir.2006)). In any event, "[e]xpert testimony proffered solely to establish the meaning of a law is presumptively improper." *Mikutowicz,* 365 F.3d at 73 (1st Cir.2004); *see also Nieves–Villanueva,* 133 F.3d 92, 99 (1st Cir.1997). "And even if such testimony has independent factual significance, i.e., aside from the content of the law, it still may be excluded 'if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury.'" *Bartlett v. Mut. Pharm. Co.,* 742 F. Supp. 2d 182, 188 (D.N.H. 2010) (quoting Fed.R.Evid. 403); *see also United States v. Ahrendt,* 560 F.3d 69, 76 (1st Cir.2009).

Here, Panish provides an opinion that the door and closer are in violation of a number of codes and standards. Panish does not and cannot, however, provide an opinion that the foregoing codes and standards are applicable. Panish is not qualified to make such a statement because he has no marine background. Further, Panish does not testify precisely how such standards/codes were violated. This is an improper legal opinion and is therefore inadmissible. Although experts are allowed to render opinions as to industry standards, Panish is not a member of the marine industry and provides no opinion that the cited codes are actually applied to USCG inspected passenger ferries such as the M/V EAGLE. In point of fact, Panish is unable to provide such testimony because the above referenced codes and standards do not apply to the design and build of these vessels. ***See Memorandum in Support of Defendant's Motion in Limine to Exclude Evidence of Regulatory and Standard Violations.*** Panish's legal opinion is meaningless because it does not properly address the relevancy of any of the alleged code violations with any degree of specificity.

This case is similar to *Pelletier v. Main Street Textiles, LP,* 470 F.3d 48 (1st Cir. 2006). In that case, the plaintiff proffered an expert who opined that a certain facility was in violation of various codes and safety standards, without stating which standards/codes actually applied to the facility. This "shotgun" approach, whereby the plaintiff had "several different opportunities to explain" how the expert testimony was admissible, was rejected by the Court and the testimony was properly excluded. *Id.* at 55-56. Accordingly, the

Court should exclude Panish's legal opinion because there is no evidence that the standards and codes referenced in the report apply to the M/V EAGLE.

### IV.  PANISH'S OPINION IS NOT RELIABLE.

In determining the reliability of an expert's opinion, the Court considers the following factors:

> 1. whether a theory or technique can be or has been tested;
>
> 2. whether it has been subjected to peer review and publication;
>
> 3. whether a technique has a high known or potential rate of error or whether there are standards controlling its operation; and
>
> 4. whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Daubert,* 509 U.S. at 591-95.  In doing so, the Court should consider "the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community."  *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 81 (1st Cir. 1998).  The foregoing standards apply to both scientific and non-scientific expert opinions.  *See Kumho Tire Co., Ltd.,* 526 U.S. at 141 ("We conclude that *Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge.").

Although, "[t]rained experts commonly extrapolate from existing data . . . nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *General Elec. Co. v. Jointer,* 522 U.S. 136, 146 (1997).  Further, although an expert may testify on

the basis of his experience, he "'must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how the experience is reliably applied to the facts.'" *McGovern ex rel. McGovern v. Brigham & Women's Hosp.,* 584 F.Supp.2d 418, 426 (D. Mass. 2008) (quoting *Brown v. Wal-Mart Stores, Inc.,* 402 F.Supp.2d 303, 308-09 (D. Me. 2005)). Indeed, "[t]he gate-keeping function of the trial court requires more than merely 'taking the expert's word for it.'" *Brown,* 402 F.Supp.2d at 308 (quoting Fed.R.Evid. 702 Advisory Committee Notes); *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1319 (9th Cir. 1995)("We've been presented with only the expert's qualifications, their conclusions and their assurances of reliability. Under *Daubert,* that's not enough.").

Here, Panish offers nothing more than bald conclusions that the door was malfunctioning, without further explanation. Panish does nothing to show how he arrived at those conclusions, and Plaintiff seeks to eclipse her uncontroverted lay testimony that there was nothing noticeably wrong with the door with Panish's ambiguous and unsubstantiated conclusions that the M/V EAGLE was unsafe:

- Panish's method of concluding that the door closed too quickly and with too much force on September 30, 2016 based on his December 29, 2017 inspection (and while no modifications were made to the door since the incident) is not reliable and belies common sense. Panish's inspection of the door occurred over one year later, and there is no evidence to support that it closed under the same speed and force on September 30, 2016. *See LeBoeuf v. K-Mart Corp.,* 888 F.2d 330, 333 (5th Cir. 1989); *Bailey v. Stanley Access Technologies, Inc.,* 2015 WL 6828921 at *10 (N.D. Miss. Nov. 6, 2015) (excluding evidence of inspections that occur to remote in time from the injury).

- Videotaped footage of the door closing on October 19, 2016 indicates that the door closed much slower (approximately 4 seconds) than on the December 29, 2017 inspection. To rebut this obvious footage, Panish offers the conclusory statement that belies observation stating that "my on-site observations provide reasonable substantiation that the subject door and closer were in an equal or nearly equal condition at the time . . . ." What Panish offers, in essence, is a reinterpretation of

> video footage to suit his needs. The jury is capable of reviewing the footage to confirm the realities of the door closing divorced from Panish's revisionist history.

- Panish provides no methodology whatsoever to support his conclusion that the door performed essentially the same as it did upon his inspection.

- Panish does not provide any methodology, explanation or opinion that a slower or less forceful closing door would have prevented the injury. Again, the Plaintiff placed her fingers in a location where any closing door would have caused her injury, regardless of speed and force.

Panish's opinion manifests classic *ipse dixit* and bald conclusions. It fails to satisfy *Daubert*'s requirement of falsifiability and reliability. *See Daubert,* 509 U.S. at 593, *citing* Karl Popper, Conjectures and Refutations: The Growth of Scientific Knowledge 37 (5th ed. 1989) ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability."). Essentially, Cushing is opining that the Vessel is unsafe because he said it is unsafe. This is not enough to satisfy even the most liberal interpretation of Fed.R.Evid. 702 and the opinion should properly be excluded.

This is not the first time Mr. Panish has sought to offer unreliable opinions based on tardy inspections. In *Bailey v. Stanley Access Technologies, Inc.,* 2015 WL 6828921 at *10 (N.D. Miss. Nov. 6, 2015), the Northern District of Mississippi properly excluded Mr. Panish from offering testimony about a door based on an inspection occurring eighteen months after the fact.

### V. PANISH IS NEITHER QUALIFIED NOR CREDIBLE.

Panish is no stranger to the Court system, offers "expert" testimony in a wide array of areas, and his qualifications and credibility as a licensed contractor are dubious. Panish has been sanctioned for serious breaches of professionalism in other jurisdictions. *See Ruehl v. S.N.M. Enterprises, Inc.,* 2017 WL 5749560 at *7-9 (M.D. Pa. November 28,

2017). He has demonstrated little regard for the truth and the justice system in other cases.

*Id.* at *5.* Panish's licensure and qualifications are worth questioning:

> Panish holds himself out as an expert witness in a wide array of disciplines, but has conducted himself in an unprofessional fashion in this case. Mindful of the need to avoid future risk of harm to others, we note that Panish has claimed to be licensed by the State of California as a contractor and has alleged that he is a member of the American National Standards Institute (ANSI). Since Panish's conduct in the instant case may be relevant to a consideration of his continued licensure by the state and membership in this professional association. IT IS ORDERED that the clerk will forward a copy of this decision to the appropriate licensing and professional association officials for whatever action they may deem appropriate.

*Id.* at *9.*[3] The undersigned looked up Mr. Panish with the Contractors State License Board of the State of California and was unable to confirm whether Mr. Panish is indeed a licensed contractor. There was no record in the State of California's online database.

Even if we are to give Mr. Panish the benefit of the doubt, he clearly lacks the qualifications of time travel in his *curriculum vitae* and is unable to reconstruct the condition of the door based on his December 29, 2017 inspection. Panish's statement that he has received "special training" about door closers appears to be self-serving and nothing in his qualifications indicate that he knows anything more about door closers or doors than the average layperson. Panish's experience concerning doors and door closers appears to be limited to providing expert testimony about them. His published articles appear to be published on his own website alone. Mr. Panish has absolutely no marine experience and is not qualified to offer opinions on what is appropriate in a marine environment. Simply put, Mr. Panish lacks the qualifications to provide any helpful testimony to the jury about this

---

[3] A copy of this decision is attached as *Exhibit 4.*

Case 1:17-cv-10432-DJC Document 57 Filed 12/17/18 Page 12 of 14

12

passenger personal injury case. This will not be the first time, and likely not the last time, that Mr. Panish should be excluded from providing expert testimony on account of his lack of qualifications. *See Clement v. Stanley Access Technologies, LLC,* 2016 WL 4443702 (W.D. La. August 19, 2016).

### VI. THE PROBATIVE VALUE OF PANISH'S OPINION IS OUTWEIGHED BY UNFAIR PREJUDICE.

Even if an expert opinion is admissible under Fed.R.Evid. 702, it remains subject to exclusion under Fed.R.Evid. 403. *U.S. v. Pires,* 642 F.3d 1, 12 (1st Cir. 2011) (citing *U.S. v. Montas,* 41 F.3d 775, 783 (1st Cir. 1994)). This is because there is a substantial risk that a jury will improperly interpret and/or credit an expert's opinion, simply by virtue of that witness's status as an expert:

> Indeed, such evidence presents a special level of complexity in constructing the balance between probative value and unfairly prejudicial effect. This complexity arises out of the concern that, because of an expert's stature *qua* expert, jurors may assign more weight to expert testimony than it deserves.. . . Because such testimony can carry with it an unwarranted "aura of special reliability and trustworthiness,". . . courts must guard against letting it intrude in areas that jurors, by dint of common experience, are uniquely competent to judge without the aid of experts. This concern, where pertinent, should legitimately factor into a trial court's Rule 403 analysis.

*United States v. Pires,* 642 F.3d 1, 12 (1st Cir. 2011) (citations omitted) (citing *United States v. Rodríguez–Berríos,* 573 F.3d 55, 72 (1st Cir.2009)*; Montas,* 41 F.3d at 784) (quoting *United States v. Fosher,* 590 F.2d 381, 383 (1st Cir.1979)).

In this case, even if Panish's opinion is deemed admissible under Fed.R.Evid. 702, it should be excluded under Fed.R.Evid. 403, because its probative value is substantially outweighed by the risk of unfair prejudice. Indeed, Panish cannot credit under any reliable method a single alleged defect that he finds as a substantial and contributing cause of

Plaintiff's injury.  Panish's expert status and presence before the jury alone, however, will most certainly cause the jury to improperly imply (without evidence) that the foregoing alleged defects caused the injury.  This risk of unfair prejudice substantially outweighs the minimal probative value of Panish's conclusory and unsupported opinion.  With the foregoing in mind, the opinion should independently be excluded under Fed.R.Evid. 403.

## CONCLUSION

For the foregoing reasons, Plaintiff has failed to meet her burden to show that Panish's opinion is helpful, relevant, reliable and admissible.  Panish is not qualified to provide expert opinions and has demonstrated in prior cases that he is not credible.  Plaintiff has no evidence that the alleged defects set forth in Panish's opinion have anything to do with the cause of Plaintiff's injury, which to be blunt was the placement of her fingers between the door and hinge-side jamb.  This is not enough to satisfy Fed.R.Evid. 702, and the opinion should be excluded.

By its attorneys,

**CLINTON & MUZYKA, P.C.**

*/s/ Olaf Aprans*

_____

**Thomas J. Muzyka**
**BBO NO: 365540**
**Olaf Aprans**
**BBO NO: 670434**
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
(617) 723-9165
Fax#: (617) 720-3489
Email: oaprans@clinmuzyka.com

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.2, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 17, 2018**.**

*/s/ Olaf Aprans*

Olaf Aprans