**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AMANDA ARNOLD,
      **Plaintiff,**                                                    **Civil Action No.: 17-10432-DJC**

**VS.**

THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY,
      **Defendant.**

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF**
**OTHER INCIDENTS ON RELEVANCE GROUNDS (F.R.E. 401 AND 403)**

Now comes the Defendant, the Woods Hole, Martha's Vineyard and Nantucket

Steamship Authority (the "Steamship Authority")4-, in the above-entitled action, by and

through its counsel of record, Clinton & Muzyka, P.C., and hereby submits its

Memorandum in Support of Motion *In Limine* to Preclude Evidence of Prior Incidents

on Relevance Grounds (F.R.E. 401 and 403).

**INTRODUCTION**

Plaintiff alleges that on September 30, 2016, she broke her ring and middle

fingers when she placed them between the hinge side of the door jamb and the ladies'

bathroom door onboard the M/V EAGLE.  Plaintiff seeks to admit evidence of other

incidents on not only this vessel, but the *entire Steamship Authority fleet*, to show notice

and opportunity to cure.  Plaintiff should not be allowed to do this because the other

incidents` are irrelevant under F.R.E. 401 and will be unfairly prejudicial and confusing

even if relevant under F.R.E. 403.

2

The other incidents, indeed, involved different locations, speeds, weather conditions, personnel, equipment, passengers and injuries. Many of the other "incidents" do not involve any claim at all.  None of them are known to involve a circumstance where a passenger places his or her fingers between the hinge side jamb and the closing door of the woman's head on the EAGLE.  Many appear to involve children misusing the doors on other vessels.  Three [3] of the incidents occurred subsequent to Plaintiff's injury and will serve no purpose other than to unfairly prejudice the Defendant.

The other incidents cannot be germane to notice and the opportunity to cure the M/V EAGLE woman's head door, because it cannot be reasonably expected that passengers will place their fingers between the hinge side jamb and a closing door in any door, let alone the one at issue.  Fingers getting caught on doors is a reality everywhere and does not in itself indicate a problem, as this is a common mistake.  The prior incidents do not occur with enough frequency to indicate notice and opportunity to cure any known defect or hazard.

**FACTS**

The Plaintiff claims she broke her right ring and middle fingers when she placed them between the hinge side jamb and door of the woman's head onboard the M/V EAGLE.  She was travelling as a passenger en-route to Nantucket on September 30, 2016 when this happened.  ***See Complaint, Docket No. 1.***

The M/V EAGLE is one of several vessels operated by the Steamship Authority, which supplies passenger ferry services between the Cape and Islands.  Specifically, the

3

Steamship Authority operates eleven [11] vessels total and transports in excess of three million [3,000,000] passengers per year. ***Docket No. 29-3, Parent Aff., ¶ 2.***

The Plaintiff, Amanda Arnold, is approximately 33 years old and was in her early thirties at the time of the alleged injury on September 30, 2016. ***Docket No. 29-2, Plaintiff's Answer to Interrogatory No. 1.*** She is employed as a manager and earns an annual salary that has not been disclosed. ***Id.***

At her deposition, the Plaintiff testified that she exited the woman's head, and then felt the vessel rock when she was in the outside passageway. She thereupon turned around and to place her hands on the bulkhead. She placed her right hand in the door jamb. The door closed on her right ring and middle finger between the hinge side jamb and the door. ***Exhibit 5, Plaintiff's Dep. pp. 36-38.***



*Fig. 1.1 Women's Head Door at issue (Plaintiff's expert in background). Plaintiff placed her right middle and ring fingers between the hinge side jamb and door as it was closing (arrow indicated) while in the passage way outside the bathroom, resulting in two fractured finger tips.*

The M/V EAGLE was built in 1987 for the Steamship Authority. There is no "sister ship" (i.e. similar vessel) to the M/V EAGLE within the Steamship Authority's fleet of eleven [11] vessels. The M/V EAGLE is an *Inspected Passenger Vessel* pursuant to Title 46 of the United States Code and the Code of Federal Regulations. Its design and construction must be approved by the US Coast Guard and the US Coast Guard inspects the vessel annually for compliance with applicable safety regulations. *See Docket No. 29-3, Affidavit of Phillip J. Parent, at ¶¶ 2-3.*

The door at issue is identified as Door No. "02-11." This door together with a new door closer was installed into the M/V EAGLE when the vessel underwent its mid-life overhaul between December 14, 2011 and April 22, 2012. *Docket No. 29-3, Parent Aff., ¶ 4.* During the overhaul, the M/V EAGLE was not in service. *Id.* Accordingly, the woman's head door was not in use until after the overhaul was completed on April 22, 2012. *Id.*

During discovery and over Defendant's objection, the Plaintiff sought and obtained all incident reports involving any circumstance when any passenger has reported any injury involving any door on any of the eleven [11] Steamship Authority vessels between 2011 until the present time. Of the approximate, Eighteen Million [18,000,000] passengers that transited the Steamship Authority vessels between 2011 and the present, 19 other injuries involving all of the doors on all vessels have been identified. When taking into account the Plaintiff's injury, this leaves a 20/18,000,000 chance of suffering an injury involving a door on a Steamship Authority vessel, or

0.0001%.  One has a greater chance of being struck by lightning within one year

[1/700,000].  ***See Exhibit 6, National Geographic Flash Facts About Lightening.***

The incident reports have been attached as ***Exhibits 1-4*** to this Motion.

## ARGUMENT

### I.      FEDERAL MARITIME LAW APPLIES.

Personal injuries onboard vessels transiting on navigable waters, such as here,

are governed by the General Maritime Law of the United States.  *Evans v. Nantucket*

*Community Sailing, Inc.,*  582 F.Supp.2d 121, 136 (citing *Transamerica Premier Ins.*

*Co. v. Ober,* 107 F.3d 925, 930 n. 5 (1st Cir. 1997); *Butler v. American Trawler Co.,*

*Inc.,* 887 F.2d 20, 21-23 (1st Cir. 1989); *Hamburg-Amerika Line v. Gulf Puerto Rico*

*Lines, Inc.,* 579 F.2d 115, 117 (1st Cir. 1978).  The General Maritime Law applies

regardless of whether this action is filed in admiralty, in diversity, or in state court

pursuant to the "savings to suitors clause." *Id.; Militello v. Ann & Grace, Inc.,*  411

Mass 22, 25-26, 1992 AMC 1889 (1991).  Federal Maritime Law, therefore, governs

this negligence action alleging personal injuries onboard the M/V EAGLE transiting to

Nantucket.

### II.     THERE ARE NO SUBSTANTIALLY SIIMILAR PRIOR INCIDENTS.

Under the General Maritime Law, a vessel owner is not the insurer of the

passenger's safety, and only owes passengers a duty of ordinary care under the

circumstances.  *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630

(1959); *Ree v. Royal Caribbean Cruises, Ltd.,* 315 F.R.D. 682, 685 (S.D. Fla. 2016).  A

prerequisite of establishing negligence is showing that the defendant had actual or

constructive notice of the hazard causing the injury.  *Id.*  "Therefore, generally, in order

6

to prove that a defendant breached its duty of care, a plaintiff must show that (1) a dangerous condition existed and (2) that defendant had actual notice of the dangerous condition." *Ree v. Royal Caribbean Cruises, Ltd.,* 315 F.R.D. 682, 685 (S.D. Fla. 2016).

Recognizing that multiple incidents are not often the same, the General Maritime Law allows the admissibility of *prior* incidents and *prior* accidents only under limited circumstances. They are admissible for purposes of establishing notice to Defendant under strict limitations. The general rule is that a passenger-plaintiff is permitted to admit only "substantially similar" incidents. *Ree,* 315 F.R.D. at 685 (citing *Heath v. Suzuki Motor Corp.,* 125 F.3d 1391, 1396, 1397 n. 12 (11th Cir. 1997));[1] *Bonnell v. Carnival Corporation,* 2014 WL 12580433 at * 4; *McKinnon v. Skil Corp.,*638 F.2d 270, 277 (1st Cir. 1981). A prior accident is considered "substantially similar" and therefore relevant for admissibility purposes if (1) it occurred *before* the accident at issue, (2) it did not occur *too remote in time* before the accident at issue, and (3) the past incident is "reasonably related in terms of *location **and** condition*." *Ree,* 315 F.R.D. at 685-86 (underscoring our emphasis).

Showing a prior injury that is "substantially similar" is not the final hurdle. "Even when substantial identity of circumstances is proven, the admissibility of such evidence lies within the discretion of the trial judge who must weigh the dangers of unfairness, confusion and undue expenditure of time in the trial of collateral issues against the factors favoring admissibility." *McKinnon,* 638 F.2d at 277. Further, the prior accidents must occur "with enough frequency" to provide notice to the shipowner

---

[1] In this motion, Defendant relies on case law from the Southern District of Florida, which frequently handles passenger injury claims on cruise ships.

of a hazard. *Taiaroiol v. MSC Crociere, S.A.,* 2016 WL 1428942 at 6 (S.D. Fla. April

12, 2016).

Here, the 19 other incidents are not substantially similar enough to warrant

admission under the appropriate standard:

**1.  Prior Incident Involving the Door at Issue (1 small child)- Exhibit 1.**

Other than the Plaintiff's injury at issue in this matter, there has been only one

[1] injury involving the woman's head door since it was installed between December

14, 2011 and April 22, 2012.  This injury occurred to a very young child approximately

4-5 years old, and is described as follows:

> ***Little girl coming from the rest room when vessel rolled
> side to side she stepped back and door closed on right
> hand injuring two fingers.***
> ***Docket No. 29-3, Parent Aff., ¶ 6; Exhibit 1.***

The child appears to have been unsupervised at the time of the incident, as the only

witnesses identified are "kids around the party." *Id.*  The injury is described as a

"bruise" on the right hand's third and pinky fingers below the knuckle. *Id.*   The

incident is reported to have occurred on June 29, 2012.

Other than the single incident described in the preceding paragraph, there are no

other incidents involving the door at issue within the Steamship Authority's records

following its installation between December 14, 2011 and April 22, 2012. *Id.*

The foregoing incident is not substantially similar enough to warrant its

admissibility as to notice and opportunity to cure.  The incident occurred over four [4]

years before the Plaintiff's claimed injury and there is no indication in the incident

report that a malfunction in the door caused the injury.  It appears that the cause of this

incident was the fact that a small child was operating the door without supervision, as it

8

is common for children to pinch their fingers in doors.  There is no indication that this

occurred on the hinge side of the door, and this is highly unlikely, as it appears from the

report that the child was still inside the woman's head at the time she pinched her

fingers, which would indicate the latch side of the jamb.[2]  The report indicates she

"stepped back" into the woman's head.

## 2.   Prior Incidents Involving other Doors onboard M/V EAGLE (5)- Exhibit 2.

There are five [5] incidents involving other doors onboard the M/V EAGLE

prior to the Plaintiff's injury on September 30, 2016.  These are not substantially similar

enough to be admissible for the following reasons:

- Two [2] out of Five [5] of the incidents occurred prior to when all of the doors and door closers onboard M/V EAGLE were replaced with brand new doors and closers between December 14, 2011 and April 22, 2012 during the vessel's mid-life overhaul.  Any malfunction in this equipment would have been remedied with the replacement of all of the doors and closers.  Neither the Steamship Authority nor any reasonable person would have any reason to believe that these prior incidents had anything to do with the new equipment. ***Exhibit 2, pp. 1-2.***

- Four [4] out of Five [5] of these prior incidents involve young children. Again, the Plaintiff was an adult in her thirties at the time of her claimed injury. ***Exhibit 2, pp. 1,3,4 and 5.***

- Four [4] out of Five [5] of these prior incidents involve exterior doors to the M/V EAGLE, which are subject to winds.  The door at issue is not an exterior door, and even if a malfunction were noted as a result of the incident (even though there are none indicated), it would not provide notice that the interior woman's head door had any malfunction or issue. ***Exhibit 2, pp. 1, 3, 4 and 5.***

- There is no indication at all, indeed, that there was any problem with the doors that caused any of the injuries.

- The only incident involving an interior door onboard the EAGLE did involve the woman's head door, but this was prior to all of the doors and

---

[2] Based on the orientation of the door, indeed, it would have likely been impossible for the child to have placed her fingers between the hinge side jamb and door.

9

door closers being replaced during the vessel's mid-life overhaul. ***Exhibit 2, p. 2.***

- Of the three [3] prior incidents that occurred subsequent to the vessel's mid-life overhaul, all of them occurred in 2012 and 2013- more than three [3] years prior to the Plaintiff's claimed injury. ***Exhibit 2, pp. 3-5.***

It is expected that the Plaintiff will hang her hat on the fact that there is an incident reported involving the woman's head door prior to the Plaintiff's claimed injury. Again, this incident is reported to have occurred in November 2011. ***Exhibit 2, p. 2.*** Approximately one month later, the EAGLE underwent an overhaul and the door and closer in the woman's head were replaced with a brand new door and closer (as was all other doors/closers). Accordingly, this prior incident cannot be used to show evidence of negligence insofar that there was notice and opportunity to cure an existing door or door closer malfunction that should have been remedied, because these items, even if faulty, were completely replaced.

Plaintiff will argue that the incident nonetheless warrants attention on account of Plaintiff's stretched theory that an extra handrail should have been present in the area of injury and on what is expected to be Plaintiff's misplaced claim that the incident happened substantially similar to the one at issue in this lawsuit.

The incident does appear to involve a woman steadying herself on a jamb of the door, but when we pay close attention to the report it is clear that it was nothing like the Plaintiff's injury where she stuck her fingers between the hinge side jamb and the door:

> ***Rough conditions, steadied herself @ door to woman's room, hand on door frame, door slammed on <u>right hand thumb.</u>***
> ***Exhibit 2, p. 2*** (underscoring our emphasis).

Because the injury is reported to be to the right thumb, it is clear that this November

2011 injury did not involve a person placing her hand on the hinge side jamb, as the

thumb would not be exposed to the door in such a circumstance (it would be placed on

the bulkhead immediately to the left of the jamb).  The thumb clearly was grasping the

"latch" side of the jamb, and the injury therefore is not substantially similar.



***Fig. 1.2- Plaintiff's Other Expert grasping the hinge side jamb.  Clearly, the
person reporting the November 2011 Injury did not grab this location, as her
thumb would not have been exposed to a closing door- it would be on the
bulkhead to the left as indicated here.***

Such an injury would not provide notice to the Steamship Authority to place a handrail

on the location immediately to the left of the door (when facing toward the woman's

bathroom).  On this point, it is important to note that there was and is a handrail on the

bulkhead opposite the door approximately five [5] feet away, which is in accordance

with Coast Guard Regulations.



**Fig. 1.3- Handrail located on the bulkhead five feet away from woman's head door.  Handrails were available within five foot reach as of 2011, and the 2011 incident did not place the Steamship Authority on notice to add more handrails just because this individual did not use the one available.**

Accordingly, the 2011 incident is not an indication that there was a problem with the

handrails onboard, as handrails were clearly available then just as they were on

September 30, 2016.  Even if handrails were missing as of the November 2011 injury, it

was not in the area at issue in this case, as the 2011 individual reporting her injury

would have been to the right and not to the left of the woman's head door grasping the

"latch" side of the jamb with her right hand (facing toward the head).

The description of the incident, moreover, does not indicate a handrail problem,

but a "slamming" problem.  As stated above, the Plaintiff cannot use this pre-overhaul

incident as evidence to show that there was a malfunction with the door itself because

this door and door closer was completely replaced following this November 2011

12

injury.  Accordingly, the description of the incident alone warrants exclusion because it

will improperly influence the jury that there was a preexisting "slamming" problem on a

door that has in fact been completely replaced prior to September 30, 2016.

Lastly, and not to put too fine a point on it, but this single prior incident

involving the woman's head door is just that- a single occurrence.  This occurrence

happened approximately five [5] years prior to the Plaintiff's claimed injury.  Given the

appropriate standard above, which requires frequency and proximity in time, there is no

reason why the Steamship Authority would be placed on notice that there was a hazard

concerning the woman's head door based on this single incident.  This is only amplified

by the fact that the door and closer were replaced with a brand new door and closer

following the incident.

### 3.  Prior Incidents on Other Vessels (10)- Exhibit 3

There are ten [10] other incident reports onboard other Steamship Authority

vessels that Plaintiff will seek to introduce at trial.  These are not admissible under the

appropriate standard for the obvious reason that they occurred on other vessels and will

have nothing to do with notice and opportunity to cure hazards on the woman's head

door of the M/V EAGLE.  Further, the incidents are not substantially similar for these

additional reasons:

- Six [6] out of ten [10] of these incidents involved small children. *Exhibit 3, ,pp. 1,2,4-5, 7, and 10.*  One of the incidents involved an elderly person. *Id. at p. 6.*

- Out of the three [3] incidents that did not involve a child or an elderly person, two [2] of them were on account of passengers attempting to hold open exterior doors for others, which closed due to wind exposure. *Exhibit 3, pp. 3 and 6.*

- None of the incidents appear to be on account of any hazard or defect.

## 4.   Subsequent Incidents (3)- Exhibit 4.

The three subsequent incidents do not involve the door at issue, and even if they

did, they would not be admissible because they have no bearing on whether the

Steamship Authority had notice or opportunity to cure a defect prior to the Plaintiff's

claimed injury on September 30, 2016.  Such incidents have zero [0] probative value

and only serve the purpose of unfair prejudice.

*Bonnell v. Carnival Corporation,*  2014 WL 12580433 (S.D. Fla. October 23,

2014) is instructive.  In that decision, the Plaintiff sought to admit evidence of 263 prior

slip and fall accidents on Carnival ships involving a certain type of Flexigel Decoro

flooring.  The Southern District of Florida properly precluded this evidence because of

the plethora of variables and unknown factors involved in these several prior incidents:

> Plaintiffs argue that these 263 prior accidents are
> substantially similar because each incident occurred on the
> same Flexigel Decoro flooring that was in use on the Lido
> deck of the *Pride* at the time of P.B.'s accident . . . .
> However, the record contains only minimal information
> about the nature of these 263 incidents, with only vague
> descriptions of the locations of the accidents and their
> circumstances . . . . Some falls occurred while guests were
> stepping from the pool; some involved passengers walking
> on steps; and some involved passengers simply walking on
> the deck. In some cases, the passengers described the floor
> as wet, but most of the accident records are silent as to the
> condition of the floor or the presence of foreign substances.
> Some passengers fell in shoes, others while barefoot. In one
> case, a passenger allegedly fell because the shoe on his
> prosthetic leg caught on the deck . . . . But the fact that
> these incidents all took place on the same flooring material
> is not, by itself, sufficient to show that these incidents
> occurred under conditions "substantially similar" to the
> accident at issue in this case.

14

*Bonnell v. Carnival Corp.,* No. 13-CV-22265, 2014 WL 12580433, at \*4 (S.D. Fla. Oct. 23, 2014); *see also Frasca v. NCL (Bahamas) Ltd.,* No. 12-20662-CIV, 2014 WL 1385806, at \*8 (S.D. Fla. April 9, 2014) (plaintiff who failed to address whether prior accidents occurred on a wet surface or involved the same type of footwear or other factors could not show that the prior incidents occurred under substantially similar conditions).

Here, many of the specific variables of the prior incidents are unknown and are accordingly not admissible as substantially similar incidents.

Even if the Plaintiff is capable of showing relevance of substantial similarity under F.R.E. 401, she still cannot pass the test of unfair prejudice, confusion, and time waste under F.R.E. 403. The probative value of the prior incidents is at best minimal and the risk of unfair prejudice is without question. Plaintiff, indeed, essentially seeks nineteen mini trials against the Defendant for prior "incidents," based on spurious, limited and questionable information. Not only does admitting the foregoing evidence revoke Defendant of a valid defense, it will cause waste on the part of Defendant and the Court to entertain Plaintiff's quixotic attempt to establish negligence.

The white elephant in the room, of course, is that people will be injured when they place their fingers between the hinge side jamb and the door on any door, regardless of whether it is working properly or not. Evidence that someone had their hands or fingers pinched by a door in the past is not an indication of a problem. When looking at the actual frequency that this occurs on Steamship Authority vessels, it is remarkably small given the volume of passengers. One has a better chance of being struck by lightning than injuring his or herself on a Steamship Authority door. Fingers

15

being caught on doors is something that is bound to happen in any public place because people make mistakes.  This does not mean that the doors are malfunctioning.

What the Plaintiff is essentially trying to do is to improperly and unfairly suggest a defect in Steamship Authority doors based on what is clearly a rare occurrence.  The prior incidents involving other doors have no bearing on notice and opportunity to cure.  The single incident in 2012 involving the door at issue involved a little girl.  Most of the incidents, indeed, involved small children who are prone to have their fingers pinched on doors.  Fingers being pinched on doors is a simple reality of life, and there is nothing to indicate in the incident reports that something was amiss.

## CONCLUSION

For the foregoing reasons, the Court should preclude all evidence of other incidents as irrelevant because none of them are substantially similar to the case at issue.

> Respectfully submitted,
> By its attorney,
> **CLINTON & MUZYKA, P.C.**
>
> */s/ Olaf Aprans*
> _____
> **Thomas J. Muzyka**
> **BBO NO: 365540**
> **Olaf Aprans**
> **BBO NO: 670434**
> 88 Black Falcon Avenue
> Suite 200
> Boston, MA 02210
> (617) 723-9165
> Fax#: (617) 720-3489
> Email: oaprans@clinmuzyka.com

16

## **CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.2, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 17, 2018.


"/s/ Olaf Aprans"
Olaf Aprans