**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **AMANDA ARNOLD,**<br>**Plaintiff,**<br><br>**VS.**<br><br>**THE WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY,**<br>**Defendant.** | Civil Action No.: 17-10432-DJC<br><br>District Judge Denise J. Casper |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S OMNIBUS MOTIONS *IN LIMINE* TO EXCLUDE CERTAIN MATTERS**

*May It Please the Court*:

In this trial, Plaintiff will be requesting the Court to bar certain testimony and evidence from being discussed or introduced in order to obtain a fair and impartial outcome. *U.S. v. Brodhead*, 714 F. Supp. 593, 595 (D. Mass. 1989). Under the Federal Rules of Evidence, only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401; see also *U.S. v. Abel*, 469 U.S. 45, 51, 105 S.Ct. 465, 458, (1984). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, wasting time, or needless presentation of cumulative evidence." Fed. R. Evid. 403; see also *U.S. v. Majeroni*, 784 F.3d 72, 76 (1st Cir. 2015) ("In exercising their broad discretion under Rule 403, trial judges have a feel for the evidence and the courtroom that is difficult to replace on the pages of a transcript, so our deference to judgment calls [regarding evidence] is great."). For the reasons set forth below, the

following evidence is not only irrelevant to these proceedings, but its probative value is greatly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time. Therefore, the following subjects, testimony, and evidence should be excluded.

It is respectfully requested that these rulings be made by the Court before the trial given the risk of unfair prejudice, confusion of issues, and misleading the jury that could result if any of the topics listed below are even mentioned during Defendant's opening. In the event this Court does not outright exclude a given matter discussed below, Plaintiff respectfully requests that a mandatory limiting instruction as to its proper use be given upon its admission and each and every time thereafter as such a reference is made, as provided for in Federal Rule of Evidence 105.

**SPECIFIC EVIDENCE TO BE EXCLUDED**

Plaintiff respectfully requests that Defendant be precluded from offering any evidence or argument suggesting to referring to the following matters at trial:

**A. Plaintiff's Residence;**

Plaintiff requests that the Court exclude as irrelevant and prejudicial any reference to Plaintiff's residence. This case is in part brought under diversity jurisdiction of this Court, and Plaintiff does not live in Massachusetts. Plaintiff respectfully requests that the Court exclude any reference to Plaintiff's residence as irrelevant and prejudicial to the issues in this case. The jury will be comprised of Massachusetts residents and the Defendant is a corporation that is based out of Massachusetts. As such, the Defendant may refer to the Defendant's services, as an in-state employer against an out of state resident, in an effort to sway the sympathies of the jury, and to imply that the Plaintiff is somehow an interloper suing a Massachusetts company. The

resulting prejudice to the Plaintiff would outweigh any possible relevance Plaintiff's residence would have. Further, any reference to Plaintiff's residence would waste the Court's time and have no probative value. Plaintiff therefore requests that the Court exclude any references to her home address under Rules 402 and 403. Respectfully, the only reference to Plaintiff's residence should be the Court's reference to Plaintiff having lived in New York at the time the lawsuit was brought and that is one reason this matter is being brought in federal court.

**B. Plaintiff's Social Media Information;**

Plaintiff also moves to exclude any references to her social media account, including but not limited to any posts she may have made on her social media regarding the incident at issue (Plaintiff's counsel is not aware of any relevant social media posts). Moreover, Local Rule 16.5(c) required that the disclosures made pursuant to Fed. R. Civ. Proc. 26(a)(3) (including proposed exhibit lists) be exchanged at least 28 days prior to the initial pre-trial conference; there was no social media information listed on Defendant's pre-trial exchange. Defendant did not request social media information or seek authorizations for social media postings during discovery. To the extent that the Defendant has obtained social media information regarding Plaintiff, it was not timely disclosed and as such will cause Plaintiff undue prejudice. As such, Plaintiff respectfully requests that any and all references to Plaintiff's social media information be excluded pursuant to Fed. R. Evid. 401, 402 and 403.

**C. Plaintiff's Use of Alcohol and Tobacco;**

There is no evidence expert or otherwise, that the Plaintiff was impaired at the time of the occurrence. Therefore, Plaintiff respectfully requests the Court bar any and all references to Plaintiff's consumption of alcohol at any time, including immediately before the injury at issue in this litigation occurred. Plaintiff testified that she had half of a beer prior to using the

women's bathroom. Ex. A., Arnold Dep. 19:4-20:2 (December 13, 2017). Neither of the Defendant's experts testified to Plaintiff's alcohol usage as being a factor contributing to the accident, nor did their reports include any reference to Plaintiff's alcohol consumption. There is nothing in the medical records to suggest that Plaintiff was impaired. Therefore, the fact that Plaintiff consumed half of a beer prior to the incident is not relevant, and if allowed to be mentioned at trial would cause substantial unfair prejudice to Plaintiff as the jury may believe that drinking contributed to the incident at issue. Likewise, there is no evidence that Plaintiff was a smoker or that use of tobacco impacted Plaintiff's damages or Defendant's liability. As such, Plaintiff respectfully requests the Court exclude any reference to or suggestions regarding Plaintiff and the use of tobacco or alcohol pursuant to Fed. R. Evid. 401, 402 and 403.

**D. Defendant's Expert Hendrik F. van Hemmen testifying to anything outside of his initial report;**

Plaintiff respectfully requests that the Court strike Defendant's expert Hendrik F. van Hemmen from being allowed to testify to anything outside of his expert report served in March of 2018. In November of 2018, Defendant's counsel served a *second* van Hemmen report, without any discussion with Plaintiff's counsel. Plaintiff's counsel immediately requested an explanation of defense counsel. Ex. B, Email exchange between counsel dated November 14, 2018. This request was ignored.

The cause of the sudden and impermissible mid-November 2018 report appears to be that Defendant realized their expert, Van Hemmen, had not reviewed a crucial deposition and wanted to shore up this failure.[1] Certainly, Defendant should not be able to have their expert amend his opinion 9 months after his report was served and five months after his deposition was taken, with

[1] Notably, this only occurred after the 30(b)(6) witness was successfully served with a subpoena to appear at trial.

weeks to go until trial. In the new report, the expert says that the newly provided deposition (taken long *before* the expert's March report) "provides additional insight in the production of documents and the condition of the door at the time of the incident." Ex. C, Expert Report of Hendrik van Hemmen dated 11/9/2018. Aside from being nine months too late and long after the close of discovery, there is absolutely nothing in this mid-November report that identifies what the "additional insight" is, much less discuss this "additional insight" and provide grounds for it. Simply put, serving such a report was improper and, in any event, it was completely deficient and nothing the expert may have belatedly gleaned from the 30(b)(6) deposition of Carl Walker should be permitted at trial.

**E. Arguing that Complying with United States Coast Guard Regulations Means that The United States Coast Guard Actually Tests the Door Closer Device at Issue;**

Plaintiff anticipates that Defendant will elicit testimony or imply at trial that because the EAGLE received a Certificate of Inspection from the U.S. Coast Guard, the U.S. Coast Guard somehow found that the door at issue closed in a safe manner for passengers; or the Defendant will elicit testimony or imply that U.S. Coast Guard regulations provide standards relevant to the speed at which a door should close. Both such suggestions would be false and this is demonstrated by Plaintiff's Interrogatory Number 13 and Defendant's Response thereto, which assert no such regulation:

> 13. Identify any standards used by the Defendant to ensure the safety of passengers entering and exiting public bathrooms aboard the Eagle.
>
> RESPONSE:
>
> Defendant objects to this Interrogatory on the grounds that it is vague and seeks legal conclusions that undersigned is not qualified to make.
>
> Without waiving the foregoing objection, United States Coast Guard regulations set forth in Title 46 of the Code of Federal Regulations.

> Further, the standards of common sense and common knowledge applies to door safety onboard the EAGLE. It is a matter of common sense and common knowledge that fingers will be injured if caught between jams and doors and that placement of one's fingers between a jam and an open door, especially on a moving vessel, should be avoided. [Ex. D, Defendant's Answers to Interrogatories dated August 3, 2017].

Furthermore, while U.S. Coast Guard regulations require that doors aboard ships have positive closure to reduce fire risk, these regulations do not speak to the speed at which doors should close. There was also deposition testimony by the Defendant's employees that the Coast Guard performed inspections and that the door closer device at issue in this matter conformed to Coast Guard regulations.[2] However, when Captain Gifford was deposed, the following exchange occurred:

> Q. Okay, and when the U.S. Coast Guard issues a
> certificate of inspection, that doesn't mean that
> the U.S. Coast Guard comes onto a vessel like the
> EAGLE and tests each passenger door to make sure
> that the door closers are working properly; right?
> A. They do not.
> [Ex. G., Gifford Dep. 161:23-162:4 (December 19, 2017)].

Thus, according to Captain Gifford's testimony, the U.S. Coast Guard does not test the door closer devices and did not on this ship. Moreover, Defendant has not listed any Coast Guard employees as potential witnesses on its pre-trial exchange. Because the Defendant's employee has admitted that the United States Coast Guard does not actually perform inspections as to whether a door closer is working properly, the Defendant at trial should not be permitted to

[2] For example, Phillip Parent testified that "They're inspected, every single door is inspected annually by the United States Coast Guard…And quarterly by the United States Coast Guard." Ex. E., Parent Dep. 123:14-16 (January 19, 2018). Additionally, in response to a question about the applicable standards with reference to the U.S. Coast Guard regulations, the 30(b)(6) deponent testified that "…yes, that the Coast Guard Title 46 of the Code of Federal Regulations, if there are regulations, would be included in that and that common sense and common knowledge are very important when being on a vessel." Ex. F., Walker Dep. 121:23-122:3 (January 11, 2018).

argue by inference that passing Coast Guard inspections or obtaining the Coast Guard's Certificate of Inspection means that the Coast Guard has approved or tested the door closer devices on the *EAGLE* or determined that the door at issue closes at a safe rate of speed.

**F. Testimony that slowing the door closer's rate of speed to comply with applicable standards would have prevented the door from closing shut and thus created a fire hazard;**

There is no evidence, expert or otherwise, that a slower rate of closure would have impeded the door from fully closing shut, which is allegedly required by Coast Guard regulations. Such an assertion would require expert testimony and the Defendant's experts have not offered any opinions in their expert reports or at deposition in this regard. Absent any evidence that modifying the door to slow the door's rate of closure would have prevented the Defendant from complying with federal U.S. Coast Guard, the Defendant should not be allowed to elicit testimony suggesting this.

**G. References to Plaintiff's attire at the time of the incident**;

At Plaintiff's deposition, Plaintiff provided testimony regarding her attire at the time of the incident:

> Q: On September 30th, what were you wearing?
> A: Jeans, Teva sandals with socks, a long-sleeved
> Shirt, sweater and fleece vest, and a ball cap.
> Q: On your right hand did you have any rings?
> A: Yes.
> [Ex. A, Arnold Dep., 12:21-13:1 (December 13, 2017].

and

> Q: What did they do for you when you were received
> by the two gentlemen who were in the ambulance
> with you?
> A: They put—they were holding my fingers in
> tact. I had a ring on—this ring on this
> finger.

Q. On your ring finger?
A. Yes…
[*Id.* at 66:4-11].

The Defendant has listed images of the ring and sandals Plaintiff was wearing at the time of the incident as potential exhibits to be introduced as evidence at trial. The Court should bar any line of questioning asking about Plaintiff's attire at the time of the injury as well as bar any introduction of images pertaining to Plaintiff's attire. There is no expert opinion or any other evidence that Plaintiff's sandals in any way contributed to the injuries she suffered. While Plaintiff was wearing a ring on one of the fingers that was injured at the time of the injury, there has been no testimony by any physician or other expert that the ring contributed to the happening of the occurrence. Even if the ring did cause further harm, Plaintiff could not be held comparatively negligent for wearing a ring. Any references to Plaintiff's shoes or ring would mislead the jury and confuse the issues in this case as the occurrence and Plaintiff's damages were in no way effected by her ring or sandals.

**H. Defendant from arguing it may go bankrupt or increase fares as a result of lawsuits;**

The Court should bar any testimony or argument from Defendant that because of personal injury lawsuits brought against it, Defendant has been or will be forced to raise its fares and/or that the Defendant may go bankrupt. Any references to Defendant having to raise its fares would be unfairly prejudicial to Plaintiff as the jury would be mislead into conflating issues of Defendant's fares in the future with Defendant's liability from a prior tortious act. Moreover, any references to Defendant's possible bankruptcy would be mere speculation and also irrelevant to Defendant's liability.

## I. The Number of Passengers the *EAGLE* Carries Each Year

Defendant should be barred from offering any testimony or other evidence as to how many passengers it transports on the *EAGLE* each year. The expert report produced by van Hemmen alleges information regarding the number of passengers that travel on the *EAGLE* and speculates, without any stated basis, how many times the women's bathroom door at issue is opened and closed.[3] The Defendant should not be permitted to state, suggest, imply, or argue that because it carries a large number of passengers, there will be some instances of people having their hands injured by closing doors, without some stated and demonstrated analysis to support this. The Defendant has offered no comparative data or data evaluation of any kind in the Rule 26(b)(4) expert disclosures. There is nothing of any kind offered that provides some background rate on the number of people one would expect to suffer injuries due to doors closing on their hands on their boats such as the *EAGLE*. Therefore, their experts' *ipse dixit* assertions regarding the number of door closings to be expected in transporting this alleged number of passengers should be rejected.

Under Fed. R. Evid. 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

[3] "The vessel carries about 100 passengers on average per leg and runs 6 legs per day for about 300 trips per year, which results in 180,000 passengers per year, assuming half females, one time in and one time out per female passenger, but occasionally two or more people entering or existing at once. This would result in approximately 90,000 cycles per year." Exhibit H, Expert Report of Rik Van Hemmen dated 03/08/2018, p. 23, fn. 7. Van Hemmen also stated that the Steamship Authority carries over 3 million passengers per year. *Id.* at 24.

In *Daubert v. Merrel Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L.Ed. 2d 469, (1993), the Court stated that "…trial judges must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," which the Court later clarified applied not only to expert testimony that was "scientific" in nature, but all expert testimony. *Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 143 L.Ed. 2d 238 (1999). Pursuant to *Daubert*, trial judges must determine whether the expert testifying to scientific knowledge that will assist the jury to understand or determine facts at issue in the litigation. *Daubert*, 509 U.S. 579, 593, 113 S. Ct. 2786, 2797. While the Court in *Daubert* listed some factors to be used in order to determine whether or not expert testimony would be useful, the Court made clear that the factors listed were not definitive[4]. *Id.* In *Kumho Tire Co.,* the Court went onto to note that Fed. R. Evid. 702 "grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the *particular facts and circumstances of the particular case.*" *Kumho Tire Co.,* 526 U.S. 137, 158, 119 S. Ct. 1167, 1179 (emphasis added).

In this case, the Defendant has no expert who is qualified to provide such analyses to the jury, even if Defendant had produced and turned over statistical studies or analyses. Defendant's expert, van Hemmen, has a B.S. in Aerospace and Ocean Engineering. Ex. H., Expert Report of Rik van Hemmen dated 03/08/2018, page 32. He has no advanced degrees in the fields of statistics, epidemiology or data science. *Id.* He does not hold an accreditation as a Professional Statistician or memberships in any of the national or international statistic societies. *Id.* Mr. van

[4] The *Daubert* factors include whether a theory or technique can and has been tested, whether or not it has been subjected to peer review and publication, whether there is a high know or potential rate of error and whether there are standards controlling the technique's operation, and whether the theory/technique enjoys general acceptance within a relevant scientific community. *Daubert*, 509 U.S. at 592-594, 1123 S. Ct. 2786.

Hemmen himself admits that he does "not have land-based or marine industry door/finger injury rates," he did not feel that it was necessary to inform his thinking on this topic. *Id.* Mr. Hemmen's self-serving decision to not research crucial basis for his opinion, further underscores its *ipse dixit* nature. Mr. van Hemmen read a random fact sheet on safety for skiers and snowboarders and has attempted to compare this to injury rates on maritime vessels. *Id.* at 24, fn. 9. This does not qualify as either sufficient or relevant data for comparison and cannot reasonably be considered as a reliable principle or method for either data acquisition or meaningful comparative analysis. Without providing any quantifiable evidence to the overall rate of injuries on maritime vessels, or any such related odds ratio, Mr. van Hemmen states that "a closer examination of the injury reports will actually reduce these odds dramatically for adults, since door/finger injury incidents are more common for children regardless of the setting". *Id.* at 24. Even if Mr. van Hemmen had provided such evidence or analysis, he would still not be qualified to put it forth as an expert opinion.

Similarly, Defendant's expert Michael Collyer Expert holds a B.S. in Nautical Science and Marine Transportation from the Massachusetts Maritime Academy. Ex. I., Expert Report of Michael Collyer dated 03/08/2018. He too has no advanced degrees in the fields of statistics, epidemiology or data science. *Id.* He does not hold an accreditation as a Professional Statistician or memberships in any of the national or international statistic societies. *Id.*

As such, pursuant to the flexibility afforded to district judges inherent in Rule 702 (as stated in both *Daubert* and *Kumho Tire Co.*), the Court should bar any testimony regarding statistical utterings of the number of passengers who board the *EAGLE* in relation to the injuries that passengers suffer on the *EAGLE*.

Finally, this evidence should be excluded under Fed. R. Evid. 401 and 403. Any evidence regarding the total number of passengers who travel on the *EAGLE* or with the Steamship Authority compared to the number of passengers who are injured while traveling on the *EAGLE* or Steamship Authority is at root irrelevant, because it in no way tends to rebut the evidence Plaintiff will offer that the door closer *at issue here* had not been maintained, that the door closed too fast, violated codes as to rate of closure, and was too heavy for the closer mechanism. It also is irrelevant in that it does not tend to rebut that had a handrail been available next to the women's bathroom door, the incident would not have occurred.

**J. Plaintiff or Plaintiff's Counsel Required that the Defective Door Closer and Door Remain in Service;**

Plaintiff's counsel appropriately sent a preservation letter to the Defendant, requesting that no changes be made to the door or door closer until an inspection could occur. Ex. J, Letter of Preservation. Surprisingly, Defendant did not take this door or door closer out of service, but instead allowed it to continue in operation without, as had previously been true, any maintenance or adjustments of any kind. Defense counsel should not be able to state, suggest or imply that Plaintiff or Plaintiff's counsel, through exercising the right to evidence preservation, somehow subjected passengers to the same risk that Plaintiff claims caused her injuries. Engaging in any way in that tactic at trial would clearly be an abuse of the Defendant's obligation to properly preserve evidence. Furthermore, to the extent any changes may have occurred to the door while the door remained in use, the Defendant should not be able to use its spoliation of the condition of the door closer against Plaintiff or her experts on direct or cross-examination.

Dated: December 17, 2018

Respectfully submitted,

Pennock Law Firm LLC

By: /s/ Shannon Pennock
*Pro Hac Vice*
Attorney for Plaintiff
411 Lafayette Street, 6th Floor
New York, NY 10003
(551) 200-6352
Fax #: (929) 235-7273
shannonpennock@pennocklawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 17, 2018, a copy of the above document filed through the ECF system was sent electronically to the counsel listed below:

CLINTON & MUZYKA, P.C.
Thomas J. Muzyka
BBO NO: 356640
Olaf Aprans
BBO NO: 670434
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
(617) 723-9165
Fax: (617) 720-3489
Email: tmuzyk@clinmuzyka.com

By: /s/ Shannon Pennock
Shannon M. Pennock
*Pro Hac Vice*
Attorney for Plaintiff
411 Lafayette Street, 6th Floor
New York, NY 10003
(551) 200-6352
Fax #: (929) 235-7273
shannonpennock@pennocklawfirm.com