UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMANDA ARNOLD,
    Plaintiff,                                       Civil Action No.: 17-10432-DJC

VS.

THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY,
    Defendant.

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION IN LIMINE**

Now comes the defendant, Woods Hole, Martha's Vineyard and Nantucket Steamship Authority (hereinafter the "Steamship Authority"), in the above captioned civil action, by and through its undersigned counsel, Clinton & Muzyka, P.C., and hereby submits its Opposition to Plaintiff's Omnibus Motions In Limine.

    **A. Plaintiff's Residence.**

As Rule 403 explicitly states, the law shields defendant "against *unfair* prejudice, not against *all* prejudice". *United States v. Whitney,* 524 F.3d 134, 141 (1st Cir. 2008) (quoting *United States v. Smith,* 292 F.3d 90, 99 (1st Cir. 2002); *United States v. Candelaria–Silva,* 162 F.3d 698, 705 (1st Cir.1998)). "Rule 403 tilts the balance in favor of admission." *United States v. Rivera,* 83 F.3d 542, 545 (1st Cir.1996). Indeed, the unfair prejudice must "not only outweigh relevance but substantially outweigh relevance." *Id.* (citing *United States v. Aguilar-Aranceta,* 58 F.3d 796, 800 (1st Cir.1995)). "The phrasing of Rule 403 makes it clear that the discretion to exclude does not arise where the balance between the probative worth and the countervailing factors is debatable; there must be a <u>significant tipping of the scales against the evidentiary worth</u> of the proffered evidence."

*Aguilar- Aranceta,* 58 F.3d 796, 800 (1st Cir. 1995) (quoting Wright & Graham § 5221 at 309-10) (underscoring our emphasis).

The Plaintiff has alleged both Admiralty and Diversity of Citizenship Jurisdiction. Admiralty jurisdiction does not afford the right to trial by jury, so Plaintiff must meet her burden at trial to establish whether Diversity jurisdiction exists. The evidence of Plaintiff's residence, therefore, is very relevant to the case because it tends to show whether or not the Plaintiff is entitled to a jury trial from the outset. Defendant has challenged the diversity jurisdiction of the Court and the Defendant is entitled to cross examine the Plaintiff as to her residency for these purposes.

Plaintiff's residence is also very relevant and probative for purposes of giving the jury a clear picture of the events that transpired. In this case, the Plaintiff travelled up to Nantucket from New York City. Following her injury, <u>she did not go home right away</u>. She remained on Nantucket for the weekend and did not return until the weekend was over. She drove the some 4 to 5 hours home only at the conclusion of her weekend festivities and did not appear to be in any particular hurry to seek further medical treatment with her primary health care provider. These facts are very probative to the defense as they speak to the seriousness of Plaintiff's injury and whether the Plaintiff was able to remain on her preplanned weekend getaway and make the long drive home despite her injury. It will be unfairly prejudicial to the Defendant if Defendant is not able to provide this narrative to the jury.

Further, what will be presented to the jury is the fact that the Plaintiff sought treatment for her fractured fingertips in New York City. Without knowing the Plaintiff's residence, the jury may improperly conclude that the Plaintiff travelled out of state to seek a specialist unavailable locally for her injuries. This runs the risk of substantial prejudice to

the Defendant, as the jury may conclude that Plaintiff's injuries were so severe that they could not have been treated in the Commonwealth of Massachusetts, when they clearly could have.

Moreover, there is no evidence that the Plaintiff will suffer any unfair prejudice from the jury. Plaintiff cites no specific evidence of unfair prejudice or any case law supporting her position. Her notion that she may be prejudiced is purely conjectural.

Courts that have addressed this issue routinely allow evidence of a party and/or witnesses' residence and citizenship despite more concrete allegations that it will invoke prejudice from the jury. *Perez v. Puerto Rico Ports Authority,* 2012 WL 12552237 (D.P.R. July 3, 2012) (evidence of defense counsel and defense counsel experts residing outside the Commonwealth of Puerto Rico not unfairly prejudicial); *U.S. v. Martinez,* 983 F.2d 968 (10th Cir. 1992), *cert. denied,* 507 U.S. 1056 (evidence of defendant's Columbian nationality did not have to be excluded from prosecution for possession of cocaine with intent to distribute, despite association of cocaine with Colombia); *U.S. v. Simpson,* 910 F.2d 154 (4th Cir. 1990) (trial court did not abuse its discretion in weapons prosecution in admitting evidence of defendant's Jamaican citizenship); *U.S. v. Torres,* 740 F.2d 122 (2d Cir. 1984), *cert. denied* 471 U.S. 1055 (evidence of Colombian passports not unfairly prejudicial in prosecution for conspiracy to distribute cocaine). Here, Plaintiff offers nothing concrete to show why evidence of her residence will be unfairly prejudicial, and her conjecture of potential prejudice based on her residence in New York clearly does not rise to the level of prejudice in the demonstrative cases above, where the courts nonetheless admitted such evidence.

Here, the very probative evidence of Plaintiff's residence should be admitted, as Plaintiff has shown no concrete evidence of the risk of unfair prejudice or any supporting

authority. Accordingly, Plaintiff's motion to preclude evidence of her residence should be denied.

### B. Plaintiff's Social Media Information.

Fed.R.Civ.P. 26(1)(ii) expressly exempts from disclosure those materials that a party will use solely for impeachment. Social media posts can be probative and constitute party admissions. Trial Courts have been found to abuse their discretion when they preclude the admission of probative social media posts for impeachment purposes. *U.S. v. Garcia,* 729 F.3d 1171, 1179 (9th Cir. 2013).

Here, Plaintiff seeks a blanket bar on social media posts on the grounds that such posts have not been disclosed during discovery. Any social media posts of the Plaintiff are her own and there is nothing unfairly prejudicial of Defendant using such posts for impeachment purposes at trial. There is no need for the Defendant to disclose to the Plaintiff her own social media posts and there is no obligation to disclose any materials used solely for impeachment.

Further, it will be inappropriate for the Court to issue a blanket preclusion of social media posts used for impeachment purposes at this time without viewing the specific posts in question. Accordingly, Plaintiff's motion to preclude social media posts should be denied. The admissibility of social media posts can be addressed on a case by case basis at trial.

### C. Plaintiff's Use of Alcohol and Tobacco.

Plaintiff testified that she ordered beers for both her brother and herself prior to her injury, and that she had drank at least half a beer before the injury occurred. Although the Plaintiff may not have been intoxicated at the time of her injury, evidence of her consumption of some alcohol prior to the injury is relevant to the question of her reflexes,

reaction time and overall ability to ambulate at the time the accident occurred. *McInnis v. A.M.F., Inc.* 765 F.2d 240, 246 (1st Cir. 1985) (evidence of plaintiff's consumption of three beers admissible and not prejudicial to show contributory negligence); *Romine v. Parman,* 831 F.2d 944, 945 (10th Cir. 1987) (admissibility that plaintiff had some drinks hours earlier at Superbowl Party admissible in motor vehicle accident); *Socony Mobil Oil Co. v. Taylor,* 388 F.2d 586, 587 (5th Cir. 1967) (evidence that employee drunk one beer prior to accident admissible); *Kaeo v. Davis,* 719 P.2d 387, 390-92 (Haw. 1986) (finding abuse of discretion when trial court did not admit evidence of consumption of four beers prior to accident).

Here, the jury is entitled to know exactly what the Plaintiff was doing and what state of mind she was in at the time of her injury. Evidence that she had been drinking is fair game, and it will not be unfairly prejudicial to admit evidence that she had drank at least half of a beer immediately before her injury. While this may not establish that she was intoxicated, the case law is clear that evidence of drinking short of intoxication is admissible and not unfairly prejudicial, as it indicates the Plaintiff's reflexes, reaction time and overall ability to ambulate at the time the accident occurred.

As for the Plaintiff's consumption of tobacco, Plaintiff has not established any real showing that there will be a substantial risk of unfair prejudice on account of tobacco use being admitted into evidence at trial.

**D. Hendrik Van Hemmen.**

Defendant's expert Hendrik van Hemmen prepared an expert report dated March 8, 2018 which was timely served upon Plaintiff's counsel. In the course of trial preparation in early November 2018, it was discovered that Mr. Carl Walker's deposition was not forwarded to Mr. Van Hemmen for review on account of an administrative oversight. Specifically, in February 2018, the undersigned forwarded to Mr. Van Hemmen what he

believed to be all deposition transcripts in the case, but on account of administrative oversight, Mr. Walker's deposition transcript was not saved in the firm's electronic file. Upon this discovery, Mr. Walker's deposition transcript was forwarded to Mr. Van Hemmen and Mr. Van Hemmen generated the following supplemental correspondence, consisting of a single page, stating the following:

> Mr. Walker's testimony conforms with my findings in my report and neither adds nor refutes any information that I use in the formulation of my report. As such, there is no need to amend my report of March 8, 2018.

***Plaintiff's Exhibit C, Van Hemmen Correspondence dated November 9, 2018.***

In essence, Mr. Van Hemmen will not be providing any additional opinions on account of Mr. Walker's testimony. However, Plaintiff may unfairly seek to prejudice Mr. Van Hemmen and criticize that he did not review Mr. Walker's deposition transcript. The only item that will be added to Mr. Van Hemmen's testimony beyond his initial report is that he did indeed review Mr. Walker's deposition testimony.

The law of the First Circuit is clear that although expert report deadlines should be honored, the sanction of preclusion for failure to meet those deadlines should only be made under severe circumstances where at a minimum the opposing party suffers real prejudice and the trespassing party shows a brazen disregard for the Court's schedule. *Esposito v. Home Depot USA, Inc.,* 590 F.3d 72, 77-81 (1st Cir. 2009) (finding abuse of discretion of trial court for imposing the severe sanction of preclusion of expert opinion for failure to meet deadline).

Here, the Court's schedule to disclose expert reports was timely honored, and Mr. Van Hemmen's report was provided on March 8, 2018. The Supplemental Report is made to correct an administrative oversight and adds no substance other than that Mr. Walker's deposition transcript was considered.

Plaintiff has made no showing of prejudice, and Mr. Van Hemmen should be allowed to testify that he did indeed review Mr. Walker's deposition testimony.

Plaintiff notes a November 14, 2018 email from Plaintiff's counsel, which is important. In that email, Plaintiff's counsel notes "[i]f this really was just to get it on the record that he reviewed Walker's depo, because that was missing and someone realized it when Walker was served the other day, that's fine. I just need to know that." ***Plaintiff's Exhibit B, Email Correspondence.*** Clearly, Plaintiff has suffered no real prejudice and Plaintiff's Motion to Preclude Mr. Van Hemmen from testifying about the fact he reviewed Mr. Walker's deposition transcript should be denied.

Further, it is important to note that as of the time Mr. Van Hemmen authored his report and when he was deposed in July 2018, Plaintiff had not produced the file materials of their experts Cushing and Panish. These materials were not provided until the close of expert discovery in late July 2018. Mr. Van Hemmen plans on reviewing these materials prior to trial and reserves the right to comment upon them in his testimony. Mr. Van Hemmen should not be precluded from doing so because Plaintiff failed to disclose these materials for Mr. Van Hemmen's review prior to the deadline to issue expert reports in early March 2018.[1]

### E. USCG Inspections.

Under the General Maritime Law, a current United States Coast Guard Certificate of Inspection is relevant and probative evidence to show that the vessel was seaworthy and in compliance with applicable United States Coast Guard regulations. *Valentine Waterways Corp., v. Tug Choptank,* 260 F.Supp.210, 215 (E.D. Va. 1966); *South, Inc. v. Moran*

---

[1] Again, we do not expect this to change the substance of Mr. Van Hemmen's opinions. However, Mr. Van Hemmen should not be criticized at trial on account that he has failed to review materials especially when they were not timely provided.

*Towing & Transp. Co.,* 252 F.Supp. 500, 506 (S.D.N.Y 1965); *C.J. Langenfelder & Sons, Inc. v. Dana Marine Service, Inc.,* 1991 WL 13882 at *10 (E.D. La. January 31, 1991). Plaintiff's chief complaint about the M/V EAGLE's United States Coast Guard compliance is that it is not conclusive as to whether the Coast Guard actually inspected the ladies' bathroom door at issue every year. Plaintiff's motion ignores a fundamental tenant of relevance.

The standard for relevance under the Federal Rules of Evidence, is exceptionally broad and well known. Evidence is relevant if "it has <u>*any tendency*</u> to make a fact more or less probable . . . ," and "the fact is of consequence in determining the action." F.R.E. 401 (our emphasis added). As Professor McCormick famously quoted, "a brick is not a wall," meaning that one particular piece of evidence (the brick) need not conclusively prove a material point (the wall), as the proper standard is whether that evidence has *any tendency* to do so. *Cleary*, *McCormick on Evidence § 185, at 542-43*.

The case law cited above is clear that admission of a current Certificate of Inspection is relevant and probative (but not conclusive) to establishing that the vessel was seaworthy and safe. This evidence need not be conclusive to be admissible under the appropriate legal standard, and federal courts routinely allow consideration of a vessel's current Certificate of Inspection as evidence.

Plaintiff, without offering any evidentiary or legal standard, seeks to preclude evidence that the M/V EAGLE was compliant with its Certificate of Inspection and United States Coast Guard ("USCG") regulations. The evidence is certainly relevant because it tends to show that the Steamship Authority was not placed on any notice of defects with the vessel, including the ladies' head door, and that the M/V EAGLE was current with United States Coast Guard safety requirements.

Case 1:17-cv-10432-DJC   Document 92   Filed 12/28/18   Page 9 of 14

9

Plaintiff complains that the United States Coast Guard offers no minimum speed requirements for door closers, but does require a door closer for fire doors, such as the door at issue in this case. This evidence does not rise to the level of unfair prejudice, and it is extremely probative because it shows that the M/V EAGLE was not in violation of any applicable regulations at the time of the incident. Plaintiff, on the other hand, seeks to offer evidence of inapplicable land based regulations to a United States Coast Guard inspected passenger vessel. To deliver what the Plaintiff is seeking at trial would be absurd, as it would preclude evidence of compliance with safety regulations that are undisputedly applicable (Title 46 of the C.F.R.) in favor of standards published by Non Government Organizations and disability regulations required for land-based building construction. To allow Plaintiff's motion in this regard would contravene established maritime law and standard marine practice.

There is nothing unfairly prejudicial in showing that the M/V EAGLE was compliant with all United States Coast Guard Safety requirements. This evidence, indeed, strikes to the heart of the matter.

Plaintiff bases its motion to preclude evidence of USCG regulatory compliance based on conflicting deposition testimony as to whether the USCG inspects *every door* during the annual inspection. Again, whether the USCG inspects every door or not does not speak to the admissibility of the evidence, but the weight. What can be said is that the USCG inspected some doors onboard and that the Steamship Authority was not placed on notice of any defect or problem with the ladies' head door as a result of any USCG inspection.

### F. Standards and Fire Hazards.

Plaintiff seeks to preclude testimony that a slower closing door will prevent it from closing shut on the grounds that expert testimony is required to provide such an opinion.

If we are to take the Plaintiff's theory of liability *reductio ad absurdum,* then the door should have remained opened indefinitely and never closed so that Plaintiff would have had sufficient time to utilize the hinge side jamb as a handle. Obviously, the door had to close at some point and Defendant is entitled to offer evidence that the door has to close and that a reasonable closing speed is warranted.

Here, Defendant has in fact provided the expert opinion of Mr. Van Hemmen advising that the 3-6 second closing speed set forth in the Dorma installation manual is a reasonable rate of closure, and should be allowed to present this evidence at trial.

Plaintiff provides not legal argument to preclude the foregoing evidence, and her motion in this regard should therefore be denied.

### G. Plaintiff's Attire.

Plaintiff's clothing is relevant to provide the jury an accurate account of the Plaintiff's reflexes, reaction time and overall ability to ambulate at the time the accident occurred. In particular, Plaintiff objects to the admission of her footwear (sandals) and the ring she was wearing at the time of the incident. Both are particularly relevant as they will show Plaintiff's ability to react on her feet and she wore a ring at the time of the injury.

Plaintiff has cited no authority or reason why the Plaintiff's attire will be unfairly prejudicial.

### H. Bankruptcy and/or Fare Increases.

Defendant does not intend to offer such evidence or argument, and Plaintiff's motion on this point is therefore moot.

I. **Number of Passengers.**

F.R.E. 703 provides that an expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed, and that if experts in the particular field would reasonably rely on those kinds of acts or data in forming an opinion, then they need not be admissible at trial.

Here, Defendant's Expert Rik Van Hemmen was provided with the information as to the annual amount of passengers on the M/V EAGLE and fleetwide by the Port Captain Greg Gifford. *See Exhibit 1, Deposition of Van Hemmen at p. 145.* Captain Gifford has knowledge of this amount of passengers on account of his position in the Steamship Authority. It is perfectly reasonable for Mr. Van Hemmen, a marine engineer and naval architect, to rely on this information as accurate.

From this number, Mr. Van Hemmen performed a simple mathematical calculation utilizing the amount of hand-door injuries that have occurred on the M/V EAGLE since 2011. This information was provided in the form of incident reports. Mr. Van Hemmen, a marine engineer and naval architect is perfectly capable (just as most of us are) of performing this simple calculation to arrive at the rate of injury. *See Excerpts of Van Hemmen Report attached hereto as Exhibit 2.*

There is nothing *ipse dixit* about performing these calculations and the calculations are indeed reliable. Mr. Van Hemmen does not need to be a member of any society of statisticians to perform them and his credentials as a Naval Architect and Marine Engineer are sufficient.

Mr. Van Hemmen's calculations, moreover, were entirely to rebut the ridiculous proposition offered by the Plaintiff's Naval Architect, Dr. Cushing who opines that the rate

of 3.66 injuries per year is a high rate of injury. ***See Exhibit 2, p. 14.*** Plaintiff complains that it did not receive "background data" concerning the rate of passengers, but Mr. Van Hemmen is entitled to rely on information supplied to him directly by the Steamship Authority. Given that Mr. Van Hemmen's opinions are offered in rebuttal to Dr. Cushing's, noting the amount of passengers served is entirely fair because Dr. Cushing conveniently omits them from his report, which, contrary to Mr. Van Hemmen, is entirely unreliable and statistically unviable. While Plaintiff seeks to preclude Mr. Van Hemmen's testimony as to the rate of injury onboard Steamship Authority vessels because he is not a "statistician," Plaintiff conveniently omits that Dr. Cushing is likewise not a statistician.

Further, the rate of passengers serviced by the Steamship Authority on a yearly basis was never concealed from the Plaintiff during discovery, as the Plaintiff likewise conveniently omits. ***See Docket No. 29, Defendant's Memorandum in Support of Motion for Protective Order, Affidavit of Philip J. Parent, Exhibit C.***

Lastly, it is important to note that Plaintiff will be entitled to cross examine both Mr. Van Hemmen and Captain Gifford at trial as to the veracity of the information. Any criticism of the amount of passengers based on this cross examination speaks to the weight and not admissibility of the evidence.

### J. Litigation Hold Request.

Plaintiff issued a litigation hold request letter upon the Defendant on October 11, 2016, less than two weeks following the injury. Plaintiff, however, did not elect to inspect the door and closer until more than a year following the incident. Defendant has moved to preclude the admission of any evidence of the December 29, 2017 survey because it is not demonstrative as to the condition of the door at the time of the event. If, however, evidence of this inspection is admitted at trial, then Defendant should be entitled to show the jury that

it purposefully made no adjustments while the door was being used for over a year by passengers, per Plaintiff's request.

Plaintiff's counsel could have conducted the inspection of the door and closer almost immediately following the injury, but elected to lay in wait.  At no point did the Plaintiff request that the door and closer be "taken out of service," as the Plaintiff now suggests for the first time.  Defendant is not using its "spoliation" as evidence.  The Plaintiff sat on her hands purposefully and failed to conduct aa timely inspection.  Defendant is perfectly entitled to rebut Plaintiff's inspection with this correspondence, and Plaintiff has shown no unfair prejudice.

WHEREFORE, Defendant respectfully prays that this Honorable Court deny Plaintiff's Omnibus Motions In Limine.

By its attorneys,
**CLINTON & MUZYKA, P.C.**

*/s/ Olaf Aprans*

_____

**Thomas J. Muzyka**
**BBO NO: 365540**
**Olaf Aprans**
**BBO NO: 670434**
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
(617) 723-9165
Fax#: (617) 720-3489
Email: oaprans@clinmuzyka.com

**CERTIFICATE OF SERVICE**

Pursuant to Local Rule 5.2, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice

of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 28, 2018**.**

*/s/ Olaf Aprans*

Olaf Aprans