UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMANDA ARNOLD,<br>      **Plaintiff,**<br>VS.<br><br>THE WOODS HOLE, MARTHA'S VINEYARD<br>AND NANTUCKET STEAMSHIP AUTHORITY,<br>      **Defendant.** | Civil Action No.: 17-10432-DJC |

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF COMPREHENSIVE REPORT COMISSIONED BY DEFENDANT

Now comes the Plaintiff in the above entitled matter and by and through her attorneys submits Plaintiff's Opposition to Defendant's motion *in limine* to preclude evidence of the comprehensive report commissioned by the Defendant outlining the Defendant's various failures.

Defendant's motion should be denied for the reasons set forth below.  Plaintiff urges that the Report should be admissible during examination of Defendant employee witness and Defendant experts.

### BACKGROUND

Plaintiff, Amanda Arnold, was 31 years old and travelling aboard the Defendant's passenger ferry the M/V *EAGLE* to Nantucket on September 30, 2016.  Approximately half-way through the trip Ms. Arnold exited the women's bathroom.  As she was exiting through the bathroom door, the boat rolled and Ms. Arnold attempted to brace herself on the only thing she could – the wall, which had no handrail, and the door frame.  In that instant, the door, which should have had a mechanism that slowly closed the large heavy door, slammed shut on her fingers trapping them until she was freed by a nearby passenger who came to her aid and was able to open

the door. The ends of Ms. Arnold's middle and ring fingers were nearly amputated. Ms. Arnold underwent surgery to her fingers and today she still suffers from permanent pain, loss of sensation, disfigurement and disability to her fingers, hand and arm (as agreed to by Defendant's expert). Ms. Arnold's injuries are a result of Defendant's failure to properly maintain and adjust the door closer device affixed to the women's bathroom door, use of a door too heavy for the door closer and failure to provide an accessible handrail adjacent to this critical public doorway, despite having had similar injuries occur with this and other doors and in the same manner.

In May 2018, Defendant commissioned three non-party consultant groups to perform a comprehensive review of Defendant's operations. Part of this review included fleet maintenance. The report was published for public consumption in December 2018, days prior to the deadline to file motions *in limine*. Plaintiff had no knowledge of this report until approximately 10 days ago. Plaintiff immediately notified defense counsel that it would be seeking to admit the report into evidence. Defendant now moves to exclude the report at trial.

## ARGUMENT

On the evening of December 17th, various Massachusetts news outlets published news that Defendant had commissioned and now published a report outlining the various cost-cutting measures the Defendant had undertaken at the expense of its passengers including passenger safety. Hannah Schuster, *Report Calls for Change at Steamship Authority*, The Falmouth Enterprise, Dec. 17, 2018. https://www.capenews.net/falmouth/news/report-calls-for-change-at-steamship-authority-print/article_5b6396a2-f2c1-565f-81ad-9df95f1451e5.html. Plaintiff's counsel was able to obtain a copy of this report on December 18th and promptly notified Defendant's counsel by amending its proposed exhibit list. Defendant's counsel indicated it would move to exclude. Plaintiff urges that the Report should be admissible during examination of

Defendant employee witness and Defendant experts.

**A. The Report is Relevant and Defendant Waived Any Privilege it Now Seeks to Invoke**

Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. One of the primary issues in this case is Defendant's failure to perform corrective and preventative maintenance on the various doors throughout its fleet, which has resulted in injuries to Plaintiff as well as many other passengers.

There are many passages in the Comprehensive report that pertain to the Defendant's inefficiency in performing maintenance. For example, the report particularly faulted Defendant's engineering department, stating "[Defendant] has chronically neglected operational processes and critical engineering details in ways that have caused major vessel incidents…" Ex. A, Comprehensive Report at 65. The report states that in comparison data available from the Washington State Ferries, it was reasonable to conclude that Defendant's engineering management lacked sufficient resources. *Id.* at 66. The report also highlighted the faults with Defendant's MAXIMO system, including, crucially, "**Lack of preventative maintenance automation.** The Maximo system is not configured to trigger preventative maintenance tasks based on operating hours, so vessel crews typically perform all hourly maintenance on equipment based on their own discretion." *Id.* at 67. The report faulted Defendant's ability to perform maintenance, specifically stating:

> [Defendant's] management exhibits a level of frugality, or 'penny pinching', that hinders its ability to implement best practices and function properly. [Defendant]'s frugality is based on admirable goals, but its overemphasis on cost reductions has been penny wise and pound foolish. Excessive frugality has resulted in understaffing across the organization, but especially in key technical roles within vessel operations and engineering. This has directly and indirectly contributed to vessel incidents. These incidents end up costing [Defendant] due to unplanned maintenance and lost revenue.

*Id.* at 2.

With regard to the Defendant's Safety Manual, a document that was the subject of much deposition testimony in this matter[1], the Report found the following:

> There is no comprehensive safety manual documenting [Defendant] safety policies to be used throughout the organization, so what policies do exist are not available to personnel onboard [Defendant vessels], within the vessel maintenance facility, and at vessel terminals. An incomplete Operations and Safety Management Manual was developed in 1997 but has not been updated since, and according to most accounts, is not used.  Similarly, an Engineering & Maintenance Safety Management Procedures Manual was developed, but never approved by management or officially released, although some specific policies in it are in use.  Most employees were unaware of the existence of either manual.

*Id.* at 52. The Report raises several concerns regarding the Defendant's claims to have a strong safety culture and to have implemented adequate policies and procedures for achieving a safe environment for passengers.

The Court should disregard any attempt by Defendant to invoke the self-critical analysis privilege, as Defendant waived any privilege it may have been entitled to by posting the Report on its website for public consumption[2].  Moreover, the mere fact that Defendant commissioned a report does not constitute a *per se* subsequent remedial measure the likes of which contemplated by Fed. R. Evid. 407.  *See* Fed. R. Evid. 407 advisory's committee notes.

### B. The Report is Not Inadmissible Hearsay

In its motion to preclude the report, Defendant concedes that it "commissioned [three consulting firms] to perform a comprehensive review of [Defendant's] operations…This comprehensive review culminated in a report published on December 13, 2018." Def. Mtn. in *lim*.

---

[1] *See*, *e.g.,* Ex. B, Deposition of Captain James Corbett ("Corbett Dep.") 42:3- 5 ("Do you follow the policies that are are outlined in [the safety manual]? A. Of course"), Jan. 19, 2018.
[2] The case Defendant cites to, *In re Block Island Fishing, Inc.*, 323 F. Supp. 3d 158, (D. Mass. 2018), dealt with a party seeking to invoke the self-critical analysis privilege to obtain a protective order during discovery, not after it published its report on its own easily accessible webpage for public consumption. Here is the link to the report on Defendant's website: https://www.steamshipauthority.com/news/188-steamship_authority_releases_results_of_independent_review.

to Preclude Report on Steamship Authority at 1-2. Since Defendant, in its own words, commissioned the report, the report is not inadmissible hearsay and is admissible under the various statements excluded from rule barring hearsay, most relevantly from Federal Rule of Evidence 801 as follows:

- 801(d)(2)(A) (which permits statements made by the Defendant's employees in their representative capacity to be brought into evidence, which is applicable here as the Defendant commissioned the other firms to draft the report);
- 801(d)(2)(B) (which permits statements made by a party into evidence that the party adopted, which applies here since the Defendant paid for the report, published the report on its own webpage, and has already adopted the report);
- 801(d)(2)(C) (which permits into evidence statements made by people whom the Defendant authorized to make such statement, which applies here as Defendant authorized the consulting groups to draft the report); and
- 801(d)(2)(D) (which permits into evidence statements made by Defendant's agents or employees within the scope of their work; again, the Comprehensive Review was made by Defendant's employees or agents working within the scope of their employment and/or agency).

### C. Conclusion

For all the foregoing reasons, Defendant's motion *in limine* should be denied entirely.

Dated: December 28, 2018

Respectfully submitted,

Plaintiff's Counsel

By: /s/ Shannon Pennock
Pennock Law Firm LLC
*Pro Hac Vice*
411 Lafayette Street, 6th Floor
New York, NY 10003
(551) 200-6352
Fax #: (929) 235-7273
shannonpennock@pennocklawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2018, that a true and correct copy of the foregoing document was served upon counsel of record by electronic mail through the U.S. District Court, District of Massachusetts, electronic case filing system.

**PENNOCK LAW FIRM, LLC**

By: /s/ Shannon Pennock
Pennock Law Firm LLC
*Pro Hac Vice*
411 Lafayette Street, 6th Floor
New York, NY 10003
(551) 200-6352
Fax #: (929) 235-7273
shannonpennock@pennocklawfirm.com