## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

AMANDA ARNOLD,
        **Plaintiff,**

                                                        **Civil Action No.:**
                                                        **17-10432-DJC**

**vs.**

THE WOODS HOLE, MARTHA'S
VINEYARD AND NANTUCKET
STEAMSHIP AUTHORITY,
        **Defendant.**

### DEFENDANT'S MEMORANDUM IN SUPPORT
### OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW

Now comes the Defendant, the Woods Hole, Martha's Vineyard and Nantucket

Steamship Authority (the "Steamship Authority"), in the above-entitled action, by and

through its counsel of record, Clinton & Muzyka, P.C., and hereby submits its

Memorandum in Support of its Motion for Judgment as a Matter of Law.

### INTRODUCTION

The evidence in the light most favorable to the Plaintiff shows that the ladies'

bathroom door on the M/V EAGLE may have closed too fast and perhaps with too much

force, but this alone cannot establish liability. Plaintiff's case in chief fails on two fatal

fronts: (1) the alleged dangerous condition on the M/V EAGLE (a slamming door and no

handrails) was open and obvious, and (2) there is no evidence, via expert opinion or

otherwise, that the slamming door and lack of handrails were the "but for" or proximate

causation of Plaintiff's fingertip injury. Plaintiff has failed to show in any sense, indeed,

that her injury would have been prevented had the door been working within the Americans with Disabilities Act and other unnamed standards for which her expert witnesses advocate. Simply put, there is nothing that a shipowner can do to prevent passengers from being injured if they place their fingers between a closing door and the hinge side door frame. The expert testimony about the perceived failures of the door closer and hand rail system are nothing more than a red herring. Accordingly, Plaintiff has failed to provide evidence essential to her claim and Judgment as a Matter of Law should be entered pursuant to Fed.R.Civ.P. 50(a) directing verdict for the Defendant.

## FACTS

### I.   THE PLAINTIFF

The Plaintiff is Amanda Arnold. At the time of her claimed injury on September 30, 2016 she was thirty-one [31] years old. She is five feet eleven inches tall [5'11"] and weighed approximately one hundred sixty-five pounds [165 lbs.] on the date of her claimed injury. *Exhibit 24, Nantucket Cottage Hospital Records.* She was working as a bar manager in New York City at the time of her injury and now working on vineyards in Napa Valley California. *Arnold Test., Trial Day 1.*

On September 30, 2016, the Plaintiff boarded the M/V EAGLE in Hyannis, Massachusetts bound for Nantucket, Massachusetts. She was planning on attending a wedding and spending the weekend in Nantucket. *Arnold Test., Trial Day 1.*

### II.   THE M/V EAGLE

M/V EAGLE (O.N. 910026) is a two hundred eighteen foot [218.7 ft] United States Coast Guard ("USCG") inspected passenger ferry. *Certificate of Inspection, Exhibit 42.* The vessel is inspected quarterly by the United States Coast Guard and

3

receives a Certificate of Inspection ("COI") when it passes this inspection. *Gifford Test.,*

*Trial Day 3; Exhibit 42, Certificate of Inspection.*  At the time of the incident, the M/V

EAGLE was operating pursuant to a current Certificate of Inspection. *Gifford Test.,*

*Trial Day 3; Exhibit 42, Certificate of Inspection.*

There is a single ladies' restroom or "head" onboard the M/V EAGLE.  This

restroom is located in a passageway that has a handrail across the passageway from the

door, as required by USCG regulations.  The passageway is five feet [5'] wide.



*Exhibit 4: Passageway at issue.  The passageway had a
handrail opposite the Woman's Head Door as required by USCG
Regulation, within five foot [5'] reach.*

The woman's restroom door is controlled by a door closer, a Dorma model 8616. *Panish*

*Test., Trial Day 2.*

The door and the door closer were installed on the M/V EAGLE during its midlife

overhaul between December 2011 and April 2012. *Walker and Parent Test., Trial Day*

*3.*

4

There is no record of the door or closer malfunctioning prior to the alleged

incident on September 30, 2016. ***Walker Test., Trial Day 3.*** All work orders and records

are kept electronically in the Steamship Authority's MAXIMO record keeping system.

***Walker Test., Trial Day 3.*** There was no outstanding work order request made as of that

time for this door and its closer. ***Walker Test., Trial Day 3.***

### III. THE INCIDENT

Approximately halfway into the voyage, the plaintiff went to the ladies' room. At

this time, *the vessel was rolling because of the sea state, but this did not cause any*

*concern for the plaintiff or hamper her ability to walk.* ***Id.*** The plaintiff walked from her

booth down the passageway to the only ladies' room which was located in the vessel's

midship area and to her left-hand side. ***Id.***



*Exhibit 4, Red Arrow Points to Ladies Room Door and the direction*
*of Plaintiff's approach.*

As Plaintiff opened the door and proceeded in, *she observed that the door was heavy and that it had a closing device*. ***Arnold Test., Trial Day 1.*** The door opened into the ladies' room and was hinged on the left side as she entered the ladies' room. ***Id.*** Once inside the ladies' room she observed that the door closed behind her as regulated by the closing device. ***Id.*** She also observed that there was a woman and a child. ***Id.*** Both had left safely prior to her injury. ***Id.*** As the plaintiff was departing the ladies' room, she reached across her body with her right hand and opened the door handle and proceeded to walk over the threshold after letting go of the door. ***Id.*** She proceeded through the door opening without incident. ***Id.***

*After making it safely through the door threshold* on her way out of the woman's bathroom, the Plaintiff testified that she turned right and began to proceed down the passageway back toward her seat. ***Arnold Test., Trial Day 1.*** At this point, the vessel rocked and she braced herself by turning ninety degrees to her right, placing her left hand on the bulkhead to her right and placing her right hand on the frame of the door. In so doing, her fingertips were placed between the hinge side jamb and the closing door. ***Arnold Test., Trial Day 1.***

Plaintiff testified that she was "*not paying attention*" to the closing door. ***Arnold Test., Trial Day 1.*** Plaintiff testified that her right hand was placed on the door frame for approximately two [2] seconds. ***Id.***

When the door automatically shut, it trapped the tips of the third and fourth fingers between the door and the frame. The plaintiff was unable to release herself and with the assistance of another nearby passenger the door was opened and she was immediately taken to a settee to sit down. ***Arnold Test., Trial Day 1.***

6

Plaintiff retained two expert witnesses, Mr. Panish and Dr. Cushing to opine (1) that the door was closing too fast and with too much force on the date of the incident in violation of American with Disabilities Act and other voluntary standards, and (2) that there was a lack of handrails on the bulkhead adjacent to the woman's head door. Neither opined nor can opine that her injury would not have occurred had the vessel been compliant with their recommendations.

## ARGUMENT

### I.   RULE 50 STANDARD.

In determining whether to grant a Motion for Judgment as a Matter of Law pursuant to Fed.R.Civ.P. 50(a), the Court examines "the evidence in the light most favorable to the plaintiff" to "determine whether there are facts and inferences reasonably drawn from those facts which lead to but one conclusion- that there is a total failure of evidence to prove plaintiff's case." *Ferrer v. Zayas,* 914 F.2d 309, 311 (1st Cir. 1990). There is a limit, however, to this deferential standard.  Only "rational inferences" can be drawn in favor of the plaintiff and "the plaintiff is not entitled to inferences based on speculation and conjecture." *Id.* (citing *Jorgensen v. Massachusetts Port Authority,* 905 F.2d 515, 522 (1st Cir. 1990)).

As shown below, the notion that Plaintiff's injury would have occurred differently had the door and passageway been modified to suit the recommendation of Plaintiff's expert is nothing more than speculation and conjecture, and unsupported by any evidence in the record.  Further, it is undisputed that Plaintiff observed the door and did not pay

attention to it when her hands were placed on the frame.  Judgment as a Matter of Law, therefore, is appropriate at this time.

## II.  FEDERAL MARITIME LAW APPLIES.

Personal injuries onboard vessels transiting on navigable waters, such as here, are governed by the General Maritime Law of the United States.  *Evans v. Nantucket Community Sailing, Inc.,* 582 F.Supp.2d 121, 136 (citing *Transamerica Premier Ins. Co. v. Ober,* 107 F.3d 925, 930 n. 5 (1st Cir. 1997); *Butler v. American Trawler Co., Inc.,* 887 F.2d 20, 21-23 (1st Cir. 1989); *Hamburg-Amerika Line v. Gulf Puerto Rico Lines, Inc.,* 579 F.2d 115, 117 (1st Cir. 1978).

## III.   PLAINTIFF FAILS TO SHOW NEGLIGENCE.

Under the General Maritime Law, a vessel owner is not the insurer of the passenger's safety, and only owes passengers a duty of ordinary care under the circumstances.  *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630 (1959).  Plaintiff, accordingly must show the following in order to prevail against the Steamship Authority:

> 1.      That there was an unreasonably dangerous condition on the  M/V EAGLE's ladies' restroom door;
>
> 2.      That the defendant knew or should have known that the      condition was unreasonably dangerous before the injury and       that the defendant had the opportunity to correct or warn       plaintiff about this condition before the injury;
>
> 3.      That the defendant was negligent and failed to exercise          reasonable care with respect to the condition; and
>
> 4.      The condition was the legal and proximate cause of the       plaintiff's injury.

8

*See Everett v. Carnival Cruise Lines,* 912 F.2d 1355 (11th Cir. 1990); *Meyer v.Carnival*
*Cruise Lines,* 1995 AMC 1652 (N.D.Cal. 1994); *Keefe v. Bahama Cruise Lines,* 867 F.2d
1318 (11th Cir. 1989); *Monteleone v. Bahama Cruise Line, Inc.,* 838 F.2d 63 (2nd Cir.
1988).

This duty requires vessel owners/operators to not negligently injure passengers
and to warn them of any dangers of which the vessel owner *knows or should know*.
*Kermarec,* 358 U.S. at 625; *Beard v. Norwegian American Lines,* 900 F.2d 71 (6th Cir.
1990). The plaintiff has the burden of proving both (1) breach of this duty, and (2) that
the breach was the proximate cause of the plaintiff's injury. *Keller v. U.S.,* 38 F.3d 16,
25 (1st Cir. 1995) (citing *Bjaranson v. Botelho Shipping Corp.,* 873 F.2d 1204 (9th Cir.
1989); *Evans v. Nantucket Cmty. Sailing, Inc.,* 582 F.Supp.2d 121, 137 (D.Mass.2008)
(quoting *Canal Barge Co., Inc. v. Torco Oil Co.,* 220 F.3d 370, 376 (5th Cir.2000)).

Under this standard, a vessel owner does not owe any duty to warn passengers
about *open and obvious hazards*. *Keller v. United States,* 38 F.3d 16, 24 (1st Cir. 1994);
*Kirksey v. Tonghai Maritime,* 535 F.3d 388, (5th Cir. 2008); *Jackson v. Egyptian Nav.*
*Co.,* 364 F.3d 113 (3d Cir. 2004); *Maneul v. Cameron Offshore Boats, Inc.,* 103 F.3d 31
(5th Cir. 1997); *Luby v. Carnival Cruise Lines,* 633 F. Supp. 40, 1986 AMC 2330 (S.D.
Fla. 1986); *Harnexk v. Carnival Cruise Lines,* 1992 AMC 1472, 1477-78 (S.D. Fla.
1991). *It is expected that passengers will see conditions that are obvious and that*
*passengers will be careful and make ordinary use of their senses*. The defendant is not
negligent if the conditions at issue are conditions that a careful person would have seen
and avoided through ordinary use of her senses. *Keller,* 38 F.3d at 24.

Accordingly, a vessel owner/operator cannot be negligent under the General Maritime Law if he does not have actual or constructive notice of the hazard and the opportunity to cure it before the casualty. *See, Perkins v. American Elec. Power Fuel Supply, In*c., 246 F.3d 593 (6th Cir. 2001); *Rannals v. Diamond Jo Casino*, 265 F.3d 442 (6th Cir. 2001); *Daughdrill v. Trico Marine Operators, Inc.*, 2001 WL 1602140 (E.D.La. 2001) citing *Colburn v. Bunge Towing, Inc.*, 883 F.2d 373, 374 (5th Cir. 1989). A connection between notice and foreseeability needs to exist. *McDonough v. Celebrity Cruises, Inc.*, 64 F. Supp. 2d 259, 265 (S.D.N.Y. 1999).

### A. The Danger of Placing Fingers between the Hinge Side Jamb and Door is Open and Obvious.

Here, the evidence shows that the Steamship Authority cannot be liable for Plaintiff's injury. First, there is no duty for the Steamship Authority to warn the Plaintiff about placing her fingers between the hinge side jamb and the closing door. A "doorway" is hardly a condition unique to maritime travel. Doorways are ubiquitous in both land-based and maritime applications and are routinely encountered at land-based hotels, recreational facilities, and residences. It is well known that one will suffer injury to her fingers if placed where the hinges are closing. Virtually everyone learns this at a very young age. The Steamship Authority cannot be expected to be required to warn the Plaintiff about such an open and obvious condition. *Plaintiff testified unequivocally at trial that she was not paying attention to the closing door*, and the Steamship Authority cannot be held responsible for Plaintiff's lack of attention to her surroundings.

The Plaintiff's present subjective perception of whether the doorway created an allegedly dangerous condition because the door closed faster than anticipated is irrelevant to the determination of whether a duty to warn existed. *See John Morrell & Co. v. Royal*

10

*Caribbean Cruises, Ltd.*, 534 F. Supp. 2d 1345, 1351 (S.D. Fla. 2008) (finding individual subjective perceptions of the injured party are irrelevant in the determination of whether a duty to warn existed).

Again, the duty to warn passengers does not extend to dangers that are "open and obvious." *Cohen v. Carnival Corp.*, 945 F. Supp. 2d 1351, 1357 (S.D. Fla. 2013). Courts have previously granted summary judgment in cases where the alleged dangerous condition was, or should have been, open and obvious to the plaintiff by the ordinary use of his/her senses. *See Cohen*, 945 F. Supp. 2d at 1353; *see Mendel v. Royal Caribbean Cruises, Ltd.*, 2012 U.S. Dist. LEXIS 86052, at *2 (S.D. Fla. June 21, 2012). Here, the Plaintiff's own testimony demonstrates she had sensed the conditions prior to the incident.

In *Cohen*, the plaintiff sustained injuries when he tripped and fell down the stairs located at the end of a gangplank leading off the cruise ship. *Cohen*, 945 F. Supp. 2d at 1353. The plaintiff alleged that cruise line representatives stopped him to take a photograph on the gangplank with his wife, and that suddenly he fell down the stairway. *Id*. Granting summary judgment in favor of the cruise line, the Court concluded the cruise line had no duty to warn the plaintiff of the steps at the end of the gangplank because "the presence of the alleged danger – the steps at the end of the gangplank – was, or should have been, obvious to Plaintiff by the ordinary use of his senses." *Id*. at 1358.

Similarly, in *Mendel*, 2012 U.S. Dist. LEXIS 86052, at *2, the plaintiff sustained injuries when she slipped on a step while exiting the pool on a cruise ship. *Id*. The plaintiff conceded that nothing had prevented her from seeing the stairs from which she fell. *Id*. at *4. The court granted summary judgment in favor of the cruise line on grounds

that the plaintiff failed to adduce evidence that the danger posed by the step was not obvious and failed to demonstrate that the cruise line did not maintain the property in a reasonably safe condition. *Id*. at 15. The Court concluded that it was "clear that the presence of the alleged danger – the swimming pool exit – was, or should have been, obvious to Plaintiff by the ordinary use of her senses." *Id*. (citing *Luby v. Carnival Cruise Lines*, 633 F. Supp. 40, 40 (S.D. Fla. 1986)).

In *Luby*, 633 F. Supp. at 41, the plaintiff was injured when she entered her cabin bathroom and tripped over a coaming or ledge that surrounded the shower. *Id*. The plaintiff alleged that a dangerous condition was posed by the ledge because it was concealed by the curtain. *Id*. In concluding the cruise line did not breach its duty of care to plaintiff, and granting summary judgment in favor of the cruise line, the Court found it was "clear that the presence of the ledge behind the shower curtain was, or should have been, obvious to Mrs. Luby by the ordinary use of her senses." *Id*. at 42. Additionally, a defendant is entitled to expect as a matter of law that a plaintiff would perceive that which would be obvious to his upon the ordinary use of her senses. *Id*.

More recently in the matter of *Smith v. Royal Caribbean Cruises, Ltd*. 2015 AMC 2427, 11th. Cir. 2015 [LTD], the court considered circumstances where the plaintiff had in fact observed and recognized an open and obvious condition which he later complained was the cause of his injuries. In *Smith*, the plaintiff observed "green cloudy and murky" water in the ship's swimming pool. He nevertheless chose to enter the pool, swam several lengths of the pool, and then struck his head on the wall of the pool. Plaintiff asserted the alleged "cloudiness" of the water was the risk creating condition which caused him to strike his head on the wall of the pool. In granting summary

judgment in favor of the defendant cruise line, the court correctly reasoned there was no breach of the duty of reasonable care by failing to warn him of a condition which he, or a reasonable person, would be aware of. The court specifically noted the plaintiff "by his own account" recognized the murky condition of the swimming pool before he entered it. *Smith* at 2432.

The Eleventh Circuit's decision in *Smith* is particularly instructive in this matter. *Id.* Similar to the plaintiff there that admitted to having perceived the murky water and nevertheless elected to expose himself to the hazard, Plaintiff here perceived the door and nonetheless exposed her fingertips to the hazard by placing her fingers on the hinge side jamb. The existence of the door's conditions available to Plaintiff is no different from the actually observed "cloudiness" of the water in the swimming pool. The door was not obstructed or concealed, it was actually observed by and recognized by Plaintiff. Several courts presented with premises liability actions involving "inattentive pedestrians" have likewise found alleged dangers to be of an open and obvious nature. *See, e.g., McGill v. Jameson Props, L.L.C.*, 2007 Ohio App. LEXIS 4215 (Ohio 8th App. Ct. 2007) (concluding that ramp leading from doorway to parking lot was "open and obvious" and that the plaintiff "simply was not paying attention to where he was walking"); *see also Donley v. Dost, Inc.*, 2011 U.S. Dist. LEXIS 149084, at *n.2 (N.D. Ohio Dec. 27, 2011) (finding that threshold area of hotel was clearly visible to any guest entering the lobby and noting as follows):

> ***Although, as Plaintiff has pointed out, a pedestrian is not required to look constantly downward as he walks, this does not relieve a plaintiff from looking down when it would be prudent to do so. When entering a building, crossing a threshold, going up and down steps, etc., it is reasonably prudent to look down to avoid common potential dangers.***

*Id.*

13

Plaintiff concedes that there were no obstructions between her, the doorway, and the nearby hand rail.

Similar to the plaintiffs in *Cohen, Mendel, Luby*, and *Smith,* Plaintiff was simply not availing herself of the ordinary use of her senses. *Plaintiff admitted in her testimony that she was not paying attention to the closing door.* Moreover, Plaintiff failed to employ common sense by choosing to place her fingers on the hinge side jamb, which exposed her to injury, rather the nearby hand rail. She simply failed to use due caution.

Therefore, as both the available door was an open and obvious condition which the Plaintiff was actually aware of, a verdict should properly enter in favor of the Steamship Authority.

As for the rolling of the vessel, this was likewise open and obvious, as the Plaintiff clearly experienced vessel rolling before her injury. Further, the Steamship Authority issued both verbal and written warnings to passengers and satisfied its duty to warn even if existing. More importantly, it was not the rolling itself that caused the Plaintiff's injury, but Plaintiff's placing her fingers in a location that is patently dangerous. She testified that she kept her fingers there for approximately two [2] seconds after she braced herself because she was "*not paying attention.*"

The expert testimony about the speed and force of the door and lack of handrails are a non-starter because there is no evidence that a door closing more slowly or an extra handrail would have given the Plaintiff enough time to remove her fingertips or would have provided the Plaintiff a cognizable alternative to place her hands. The Plaintiff, clearly, was not paying attention to where her hand was at the time of the incident. If she were, her fingers would not have been placed where they were. Door speed in this

14

regard, is irrelevant. Had the door closed faster, arguably, then the Plaintiff would not have had enough time to place her fingertips in this pinching location in the first place.

Further, the Steamship Authority did in fact warn its passengers about slamming doors in both its verbal safety announcement and signage placed on the M/V EAGLE.

The lack of the second handrail, much like the closing door, was open and obvious. The handrail available no more than five feet away from the Plaintiff at the time of her injury was likewise open and obvious, just as the danger of placing fingers between the hinge side jamb and closing door was open and obvious. There is no requirement for the Steamship Authority to place handrails everywhere on the ship and the Steamship Authority was compliant with all United States Coast Guard regulations.

There are limited cases that address fingers being caught between the hinge side jamb and doors. Of the reported decisions available, it is important to note that almost all of them are dismissed on summary judgment despite evidence of the doors closing too quickly or with too much force in violation of standards and regulations. This is so because courts routinely hold that the speed and force of the doors cannot be the proximate cause of such injuries and that defendant's do not have the duty to warn about placing fingers between the hinge side jamb and door. *Cremeans v. Speedway Superamerica, LLC,* 196 Fed.Appx. 401 (6th Cir. Sept. 5, 2006); *Ray v. GPR Hospitality, LLC,* 2015 WL 12683828 at *5 (N.D. Ga. Sept. 30, 2015); *Beman v. K-Mart Corp.,* 232 Ga. App. 219, 221 (1998); *Parker v. Felco Lodging Trust, Inc.,* 2010 WL 3717308 at * 2 (N.D. Ga. Sept. 24, 2010).

**B. There is No Evidence that the Steamship Authority was placed on Notice of any problem or defect in the Door.**

15

Plaintiff is unable to adduce sufficient material fact to demonstrate the Steamship Authority had actual or constructive notice such that it would have had sufficient time to implement corrective measures, or that the subject doorway at the time of Plaintiff's accident constituted a dangerous condition. There is no evidence that the Steamship Authority had notice of any prior incidents involving a passenger or crewmember grabbing the hinge side jamb at this location the previous five years since this door was placed into service.  Defendant had received no report of incident, claim, lawsuit or notice of any injury whereby a person grabs the hinge side jamb to stable herself.

It bears noting again, the applicable standard of care is "ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F. 2d at 1322. "Constructive notice 'requires that a defective condition exist for a sufficient amount of time to invite corrective measures." *Cohen*, 945 F. Supp. 2d at 1355 (quoting *Monteleone*, 838 F. 2d 63 (2d Cir. 1988)).

Mere implication of actual or constructive notice is insufficient to survive dismissal. *Adams*, U.S. Dist. LEXIS 122822 at *5 (finding that for the plaintiff to survive summary judgment, "mere implication of notice" was insufficient and that the plaintiff needed to show "specific facts demonstrating, at least, that the purported defect was detectable with sufficient time to allow for corrective action"). A plaintiff's own statements are insufficient to establish that a passenger vessel owner is on notice of a risk-creating or dangerous condition. *Cohen*, 945 F. Supp. 2d at 1357.

*Cohen* is instructive with regard to the notice issue. There, the Court found that the plaintiff had presented no evidence that the cruise line had actual or constructive

notice of the alleged risk-creating condition posed by the steps at the end of the

gangplank. *Cohen*, 945 F. Supp. 2d at 1355. Specifically, the Court noted:

> *[T]here is no evidence in the record that Carnival knew or should have known that the gangplank posed any risk-creating condition for any passenger. There is no evidence in the record of any accident reports, passenger comment reviews or forms, or reports from safety inspections alerting Carnival of any potential safety concern at the steps at the end of their gangplanks.*
>
> \*\*\*\*\*
>
> *Cohen also appears to rely on his own deposition testimony that he did not see the steps before he fell. [record citation omitted] However, his own statements are insufficient to establish that Carnival was on notice of a risk-creating or dangerous condition.*

> *Cohen*, 945 F. Supp. 2d at 1356-57.

In *Monteleone*, 838 F. 2d at 63, the plaintiff sustained injuries resulting from a fall

down a flight of stairs stemming from the plaintiff allegedly tripping over a protruding

screw at the edge of one of the steps. *Id*. The Second Circuit Court of Appeals reversed

the district court on grounds that the record did not support a finding that the cruise line

had actual or constructive notice of the protruding screw which allegedly caused the

plaintiff's fall. As the Second Circuit held, "BCL's [the cruise line] liability properly

turns on whether it had notice of the screw's protrusion. Since no one contends that BCL

had actual notice, the issue becomes whether it had constructive notice." *Id*. at 65. The

appellate court went on to accept the district court's findings that the screw in question

was, in fact, protruding and that the plaintiff tripped on it. *Id*. However, as "no witness

testified to seeing the protruding screw prior to the accident," the Second Circuit

concluded:

> *[W]e simply cannot conclude that BCL's failure to discover*
> *the condition of the protruding screw, assuming as we do*
> *that it existed prior to the fall and in fact caused the fall,*
> *constituted a lack of due care for which it should be held*
> *liable.*

*Id.* at 66.

Similar to the plaintiffs in *Cohen* and *Monteleone*, Plaintiff fails to present any evidence that the Steamship Authority had actual or constructive notice of an alleged risk-creating condition posed by the subject doorway. The Steamship Authority disputes the Plaintiff's assertion the door was a dangerous condition at all. The Director of Engineering and Maintenance, Carl Walker testified that there was no record of any defect or problem with the door prior to the incident.

Had repairs been required, a Work Order would have been generated and the repairs would have been documented when the Work Order was completed to close the request. Also, telling will be the Plaintiff's own testimony that she used both the door and the outside corridor prior to the incident.

The record contains no material facts that the defendant was on either actual or constructive notice of any dangerous condition for an interval of time sufficient to allow for corrective measures. No fact exists in the record to suggest the doorway was defective for 10 minutes or even 10 seconds before Plaintiff caught her fingertips on the closing door. Regardless, the Defendant's notice of an allegedly dangerous condition would have been no different from the Plaintiff's through her own observation and use of her ordinary senses. As noted above, the testimony of the Plaintiff regarding the state of the door moments before accident and the testimony of the Steamship Authority personnel the doorway shortly after the accident, are consistent that the door was in good working

order. According to the plaintiff, she had no difficulty observing and using the subject door.   It is also undisputed that Plaintiff safely walked past the same doorway she claims closed too quickly. Accordingly, a directed verdict in favor of the Steamship Authority is warranted.

The two prior incident reports are insufficient to establish actual or constructive notice.  First, the accident from November 2011 occurred before the door and door closer at issue was actually installed.  The only remaining incident was to a small child, over four [4] years prior to the incident at issue.  Such does not place the Steamship Authority on sufficient notice and opportunity to cure a hazard or defect and there is no evidence in the record that the subject injuries in the report were caused by actual hazards or defects in the door. *Bonnell v. Carnival Corp.,* 13-CV-22265, 2014 WL 12580433 at *4 (S.D. Fla. Oct. 23, 2014).

## IV. PLAINTIFF FAILS TO SHOW CAUSATION.

Even if a shipowner is negligent, a defendant is only liable for the injury if the negligence is the proximate, or legal cause, thereof.  "Legal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury." *Donaghey v. Ocean Drilling Exploration Co.,* 974 F.2d 646, 649 (5th Cir. 1992) (quoting *Thomas v. Express Boat Co.,* 759 F.2d 444, 448 (5th Cir. 1985).  "'In other words, to give rise to liability, a culpable act or omission must have been a substantial and material factor in causing the injury.'" *Great American Ins. Co. v. Pride,* 847 F.Supp.2d 191, 204, 2012 AMC 1872 (D. Me. 2012) (quoting *Inter-Cities Navig. Corp. v. United States,* 608 F.2d 1079, 1081 (5th Cir. 1979)) (our emphasis added).

19

"In order for the negligent act to constitute proximate cause, the act or omission must be a <u>substantial</u> factor in bringing about harm and the injury incurred must have been a <u>reasonably foreseeable consequence</u>." *Napier v. F/V DEESIE, Inc.,* 454 F.3d 61, 68 (1st Cir. 2006) (citing *Veilleux v. Nat'l Broad. Co.,* 206 F.3d 92, 123-24 (1st Cir. 2000)) (our emphasis added). "A determination of proximate cause focuses primarily on <u>foreseeability</u> and exists when a 'prudent person reasonably could anticipate' the resulting injury." *Napier,* 454 F.3d at 68 (citing *Malavé-Félix v. Volvo Car Corp.,* 946 F.2d 967, 971 (1st Cir.1991); *Marshall v. Pérez-Arzuaga,* 828 F.2d 845, 847 (1st Cir.1987)) (our emphasis added).

Further, even if the defendant's negligence is the proximate cause of an injury, it is not liable therefor if the injury was caused by an unforeseeable intervening or superseding cause. "An intervening cause is a new and independent cause of the harm which is neither anticipated nor reasonably foreseeable by the defendant: it must operate independently of and occur after the conclusion of the defendant's negligent conduct." *Napier,* 454 F.3d at 68 (citing *Malavé-Félix,* 946 F.2d at 972; *Marshall,* 828 F.2d at 848); *City of Boston v. Maritrans Corp.,* 201 F.3d 426 (1999) (quoting *Exxon Co. v. Sofec, Inc.,* 517 U.S. 830, 837 (1996)).

Here, plaintiff fails to establish to establish proximate causation.  A passenger placing her fingertips between the hinge side jamb and a closing door is not a reasonably foreseeable consequence of a door that closes too fast or with too much force.  It is likewise not a reasonably foreseeable consequence of lacking a handrail adjacent to the ladies' head.  The plaintiff's placing her fingertips in this location is an intervening and supervening cause of her injury.

20

Had the plaintiff been struck by the door on her way out, then this would be a different case and, assuming *arguendo* there was something wrong with the door on September 30, 2016, then Plaintiff would perhaps have such a foreseeable injury. It is never foreseeable, however, that passengers will place their fingertips between a hinge side jamb and a door in any case. More to the point, this would cause injury regardless of whether the door was functioning properly or not, and plaintiff has provided no evidence in her case stating otherwise. Accordingly, Plaintiff will fail to meet her burden of proving by the preponderance of the evidence that any negligent activity of the Steamship Authority proximately caused her injury.

## CONCLUSION

In essence, the Plaintiff seeks to change reality on her terms to suit a finding of liability. There is nothing that a shipowner can do in a design or maintenance sense, however, to prevent a door from causing injury if fingertips are placed between the hinge side frame and a closing door. No reasonable finder of fact could hold otherwise. The claimed slamming door and inadequate handrail systems onboard the M/V EAGLE were open and obvious conditions requiring no action on behalf of the Steamship Authority. Even if a warning or correction were required, there is no evidence that a slower closing door or extra handrails would have prevented the Plaintiff's injury. It is ubiquitous that using the space between a closing door and the hinge side frame as a handle is dangerous regardless of the door's condition or speed. Further, there is no evidence that the Steamship Authority had any notice or opportunity to cure the alleged unsafe condition. For these reasons, the Court should enter Judgment as a Matter of Law directing a verdict in favor of the Defendant.

21

Respectfully submitted,
By its attorney,
**CLINTON & MUZYKA, P.C.**

*/s/ Thomas J. Muzyka* _____
**Thomas J. Muzyka**
**BBO NO: 365540**
**Olaf Aprans**
**BBO NO: 670434**
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
(617) 723-9165
Fax#: (617) 720-3489
Email: Tmuzyka@clinmuzyka.com

## CERTIFICATE OF SERVICE

I hereby certify that the above document was filed in hand at trial at the close of Plaintiff's evidence with copies served in hand to Plaintiff's counsel on January 17, 2018.

Pursuant to Local Rule 5.2, I further certify that I will cause the above document to be filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non- registered participants on January 17, 2019.

"/s/ Olaf Aprans"
Olaf Aprans