# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMANDA ARNOLD,<br><br>    Plaintiff,<br><br>VS.<br><br><br>THE WOODS HOLE, MARTHA'S VINEYARD AND NANTUCKET STEAMSHIP AUTHORITY,<br><br>    Defendant. | Civil Action No.: 17-10432-DJC |

## PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S BILL OF COSTS

Now comes the Plaintiff in the above entitled matter and by and through her attorneys submits Plaintiff's Reply to Defendant's Opposition to Plaintiff's Bill of Costs.

## INTRODUCTION

On January 18, 2019, after a five-day trial, the jury of eight rendered a verdict in favor of Plaintiff Amanda Arnold.  Plaintiff subsequently submitted a Bill of Costs seeking taxation of the necessary costs that were incurred at trial, which provided receipts for costs Plaintiff seeks. Defendant subsequently filed opposition to Plaintiff's Bill of Costs.  For all the reasons outlined below, Plaintiff's Bill of Costs should be granted in its entirety.

## ARGUMENT

    **I.    Bill of Costs**

Pursuant to Fed. R. Civ. Proc. 54(d), costs should be allowed to the prevailing party unless there is controlling authority that states otherwise. 28 U.S.C. § 1920 outlines the general

recoverable costs and specifically includes fees and disbursements for printing and witnesses. 28 U.S.C. § 1920(3). When determining whether to grant the costs sought by a prevailing party, reviewing courts operate with "a background presumption favoring cost recovery for prevailing parties." *Guzman v. Boeing Company*, 2019 WL 468195 (D. Mass. Feb. 6, 2019) (quoting *In re Two Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig. (San Juan Dupont Plaza Hotel Fire Litig.)*, 994 F.2d 956, 962 (1st Cir. 1993)).

      **II.    The Costs Associated with Service of the Subpoenas Were Necessary**

28 US.C. § 1821(b) mandates that a witness be paid a $40 attendance fee for each day's attendance. 28 US.C. § 1821(b) also requires that a witness receive a fee for the cost of going to and returning from the court. In addition, and contrary to Defendant's argument, case law has repeatedly held that a prevailing party may recover costs for the fees involved with using a private process server. *See In re Ruhland*, 492 B.R. 92, 97 (Bankr. D. Mass. 2013); *Riofrio Anda v. Ralston Purina Co.*, 772 F. Supp 46, 55 (D.P.R. 1991), *aff'd* 959 F.2d 1149 (1st Cir. 1992); *Alflex Corp. v. Underwriters Laboratories, Inc.*, 914 F. 2d 175, 178 (9th Cir. 1990); *Bass v. Spitz*, 522 F. Supp. 134 3 (E.D. Mich. 1981); *Morris v. Carnathan*, 63 F.R.D. 374 (N.D. Miss. 1974). Moreover, fees may be taxed even where a witness does not actually testify at trial when a court order or some other extrinsic circumstance renders the subpoenaed witness's expected testimony unnecessary. *Pan American Grain Manufacturing Co. v. Puerto Rico Ports Authority*, 193 F.R.D. 26, 33-34 (D.P.R. 2000). Prior to the beginning of trial, Plaintiff utilized a private process server to serve all of the subpoenas as well as provide these witnesses with the statutory appearance fee and their travel fee.

As a threshold matter, Plaintiff's counsel prefers witnesses to appear *viva voce* if at all possible, necessitating subpoenas be served to ensure that witnesses actually appear at trial. While

Plaintiff did not end up calling all of the witnesses who were served with subpoenas, this was due to Defendant's intransigence and several changes in circumstances that occurred in the usual routine of motion *in limine* practice and agreements reached immediately before and during trial. More to the point, Defendant was provided notice that Plaintiff intended to call the various witnesses listed below prior to the service of the subpoenas and at any time could have accepted service on behalf of Defendant's employees and paid experts. The witnesses that Plaintiff subpoenaed were necessary to proving Plaintiff's case-in-chief and were subpoenaed because Plaintiff could not know for sure who Defendant was going to call. The subpoenas were reasonably necessary when served and as such the costs should be levied against Defendant.

### A.  Dr. Andrew Terrono

In July of 2018, Plaintiff deposed Dr. Andrew Terrono, Defendant's medical expert, who provided favorable testimony to Plaintiff's case with respect to her disability. As such, Plaintiff intended to call Dr. Terrono as a witness before the jury on the issue of causation and damages, and accordingly Dr. Terrono was successfully served with a subpoena on December 5, 2018, over a month in advance of the trial which began on January 14, 2019. Plaintiff named Dr. Terrono as a live witness to be called at trial in all of the pre-trial disclosures served upon Defendant starting with the December 7 pre-trial disclosure through the submission of the joint pre-trial memorandum on December 28, 2018. On December 24, 2018, when Defense counsel sent correspondence to Plaintiff counsel stating that "…we would like to schedule [Dr. Terrono's] de bene esse video deposition. Please contact us and provide your availability to do so prior to trial." Plaintiff's counsel informed Defendant's counsel of a willingness to potentially adjust Dr. Terrono's court appearance date (due to a conflict with Dr. Terrono's clinic day), but that Plaintiff's counsel had no availability to travel to Boston or anywhere else to take the deposition.

Defendant subsequently filed a motion seeking Dr. Terrono's deposition be taken *de bene esse* (notably, Dr. Terrono himself did not seek to quash the subpoena). Prior to submitting opposition to the motion, Plaintiff's counsel informed Defendant's counsel that the *de bene esse* deposition could be taken on January 20th or 21st, and the video could be played the following day at the conclusion of trial. Defense counsel did not reply to that offer, and Plaintiff's counsel subsequently filed opposition to Defendant's motion. Crucially, Plaintiff had already provided the relevant deposition testimony that it was seeking to designate for trial to Defendant, and received no objection or consent with respect to those deposition designations or any counter designations and no consent to the deposition being read.

At the final pretrial conference on January 4, 2019, the Court encouraged the parties to come to an agreement with respect to Dr. Terrono's testimony. It was only subsequent to the final pretrial conference and in the middle of the actual trial that Defendant finally agreed to have Dr. Terrono's deposition testimony read in before the jury, which Plaintiff agreed to out of respect and understanding to Dr. Terrono and his busy schedule.

Had Defendant agreed at an earlier junction to the reading in of Dr. Terrono's testimony, perhaps Defendant would have some basis for opposing Plaintiff being awarded the costs for Dr. Terrono's subpoena fees. In light of the facts outlined above, it is clear that Plaintiff absolutely needed to and was in fact going to have to call Dr. Terrono until just before the day Dr. Terrono was actually noticed to appear, and as such the fees incurred in serving Dr. Terrono were entirely necessary.

### B. Carl Walker

Mr. Carl Walker, Director of Engineering and Maintenance for Defendant, was served with a subpoena on November 7, 2018. Mr. Walker had been deposed pursuant to Fed. R. Civ. Proc. 30(b)(6). Plaintiff listed Mr. Walker as a witness to be called in each of her pre-trial disclosures and provided deposition designations of the same, which was originally served on December 7, 2018 and then served again on December 8 (Plaintiff re-served after deciding to add one more exhibit to the exhibit list). Defendant served its pre-trial disclosure on December 12, 2018: nowhere in the document were objections or counter-designations provided. It was not until the weekend before trial that Defendant provided objections to Mr. Walker's deposition testimony. After the Court ruled on the objections, Plaintiff was able to read-in the desired testimony, and Mr. Walker did not personally testify. Nevertheless, Mr. Walker's Plaintiff needed to serve Mr. Walker with a subpoena in case the testimony Plaintiff had elicited at the deposition and sought to introduce at trial would not be read in for any reason not bearing on the ultimately admissibility of the testimony itself.

### C. Kayleigh Rock

In October of 2016, Kayleigh Rock took a video of the subject door closing. This particular video was crucially important as it was taken nearest in time to the actual incident that nearly amputated Plaintiff's fingers. Plaintiff intended to introduce this video to the jury at trial, which would have necessitated Ms. Rock providing testimony at trial in order to authenticate the video. As such, a request to serve Ms. Rock was sent to the process server on or about December 20, 2018, and Ms. Rock ended up being served with the subpoena on December 27, 2018. Plaintiff had listed the video in question on its exhibit list in its pre-trial disclosures which, as aforementioned, had been served at the beginning of December 2018. On December 27, the same

day Ms. Rock was served, Defendant served its exhibit list and indicated that it would be stipulating into evidence the video Ms. Rock took. At the time the subpoena was sent out, however, Defendant had not consented to the video being introduced into evidence, and as such awarding costs to Plaintiff for this subpoena is necessary and appropriate.

### D. Michael Collyer

Michael Collyer, one of Plaintiff's experts, was served with a subpoena as well. Plaintiff intended to elicit testimony from Mr. Collyer, and anticipated that Mr. Collyer would not appear had Plaintiff simply asked Defendant to produce him at trial. Therefore, Plaintiff decided to cause Mr. Collyer to be served with a subpoena in case Defendants failed to produce him or have him appear. Mr. Collyer's office took the October 2016 video and it was expected that he could also provide testimony as to the video. Moreover, as Defendant's expert, he was also expected to provide testimony regarding adjustments and readjustments of the door at issue.

### E. Stephen Healy

Mr. Healy with a subpoena and Plaintiff called him to testify for her case-in-chief. Therefore, there can be no doubt that service upon Mr. Healy was necessary. Whether or not Defendant communicated with Mr. Healy to coordinate the time of his actual appearance at trial has no bearing on whether or not costs should be awarded to Plaintiff for serving Mr. Healy. Likewise, it is irrelevant that Defendant elicited the testimony it sought on cross-examination of Mr. Healy for the purpose of awarding Plaintiff's costs.

### F. Captain James Corbett

Plaintiff attempted to have Captain Corbet served with a subpoena. While the initial attempt was unsuccessful, Captain Corbett's wife contacted Defendant's counsel and informed counsel that the process server was attempting to serve documents on the Corbetts' property.

Subsequently, Defendant's counsel informed Plaintiff's counsel that it would be accepting service on behalf of Captain Corbett. At the time of the attempted service upon Captain Corbett, Plaintiff had intended to call the Captain as a witness to testify, but subsequently chose not to.

### G. Captain Greg Gifford

Captain Gifford was served with a subpoena and was called by Plaintiff to testify at trial during her case-in-chief. Plaintiff specifically called Captain Gifford in order to authenticate Defendant's answers to interrogatories which he had signed, and at trial Captain specifically authenticated Defendant's answer which stated the door at issue weighed 190 pounds. Defendant had previously refused to stipulate to this document being introduced into evidence, thus necessitating Plaintiff go through the process of serving the subpoena and calling Captain Gifford at trial. Whether Defendant communicated with Captain Gifford in terms of coordinating the Captain's actual appearance or elicited any testimony on cross-examination has no bearing on whether to award the costs Plaintiff seeks.

### H. Francis Tallino and Phillip Parent

Plaintiff's counsel timely served these witnesses and called them to appear at trial during Plaintiff's case-in-chief. Defendant should thus be taxed the costs associated with serving these witnesses, including their appearance fees and travel fees.

### I. Conclusion as to Witnesses

Several of the subpoenas in this instance needed to be re-served as Defendant had not previously disclosed the addresses of the relevant witnesses, requiring Plaintiff to incur more fees in attempting to find where the witnesses were located. Defendant points to no binding obligation for Plaintiff to request that Defendant produce any witness voluntarily. Plaintiff had absolutely no basis to believe Defendant would voluntarily produce the witnesses whose testimony Plaintiff

7

sought, and doing so would have mandated Plaintiff disclose its trial strategy in advance of the mandatory disclosures. What if Plaintiff respectfully asked Defendant to produce a witness on a certain day and the witness did not show? Obviously, this would have impacted Plaintiff's case-in-chief (which was time limited and thus very dependent on having no unnecessary delays), but more importantly, it would have wasted both the Court and jury's time. Therefore, it was entirely necessary to subpoena the witnesses, even those whom ended up not being called to testify.

### III. Cost of Copies

Plaintiff respectfully submits that the receipts submitted are sufficient to establish necessity. The receipts covered copying costs for printing exhibits, including the stipulated exhibits that were introduced into evidence all at once. The $86.45 charged is for "Walker_Carl (HIGHLIG)", which is in reference to the deposition designations that were submitted to the court the following day in order to determine what would be read in at trial. Other receipts contain references to this matter as well. As such, costs should be awarded as to these copies.

### IV. Trial Transcripts

Contrary to Defendant's assertions, this was a complicated matter involving multiple experts and thousands of pages of documents, necessitating a full week of trial. As such, Plaintiff's counsel necessarily obtained rough transcripts of the first four days of trial, all of which were reasonably necessary to Plaintiff prosecuting her case.

The rough transcript of day four of the trial was necessarily used to discredit Defendant's expert, Hendrik Van Hemmen, on the fifth day of trial. On the fourth day of trial, Plaintiff's expert, Dr. Charles Cushing, a naval architect and marine engineer, was cross-examined regarding a ship known as the *Pearl Mist*. Dr. Cushing testified that he had some involvement in the phase of the *Pearl Mist*'s overall design. Dr. Cushing explicitly testified that the owner of the project came to

Dr. Cushing's firm. Dr. Cushing stated that he tried to work with the owner but the owner "…had a lot of requirements that I felt were unsafe, and I objected to them, and he decided to go somewhere else after we worked for nine months on that project, and he went ahead with another firm." Rough Trial Tr., 56:17-21 (Jan. 17, 2019). Having been present during Dr. Cushing's testimony, Mr. Van Hemmen seemingly spent that evening looking into ways to discredit Dr. Cushing, as he produced pictures at trial the following day of the *Pearl Mist* in an attempt to discredit Dr. Cushing's earlier testimony at trial regarding the necessity of having a handrail next to the women's bathroom door on the *EAGLE*. Nonetheless, Plaintiff had acquired the rough transcript the night before, and was able to use the transcript on cross-examination to discredit Mr. Van Hemmen's testimony regarding Dr. Cushing by pointing out Dr. Cushing's actual testimony. Simply put, there can be no debate as to the necessity of obtaining the Day Four rough transcript, and Defendant's statement that "there is no evidence that the transcripts were used for the cross examination of witnesses" is demonstrably false. Moreover, the transcripts from the first four days of trial were relied upon in Plaintiff's closing statement and summation. As such, costs should be levied against Defendant as to the trial transcripts that were obtained.

V. **Witness Fees (For Non-Subpoenaed Witnesses)**

Defendant's sole argument with respect to the witness fees outlined in Plaintiff's Bill of Costs are the subsistence charges, as Defendant concedes witnesses are to receive $40 a day pursuant to § 1821(b) and makes no argument with respect to the witnesses' mileage fees. "A subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day." 28 U.S.C. § 1821. In this case, Plaintiffs' experts Mr. Michael Panish and the aforementioned Dr. Cushing, both were required to stay overnight as they resided

out of state. During trial, these expert witnesses stayed in the Seaport Hotel, which is moderately priced. Pursuant to 28 U.S.C. § 1821(d)(2) and (d)(3), "the subsistence cost for a witness cannot exceed the allowable maximum per diem rate for official travel by federal government employees in the area of attendance." *Bucksar v. Mayo*, 2013 WL 1320445 at *4 (D. Mass. Mar. 28, 2013). In September of 2018, the government per diem rate for lodging was $287 and the rate for meals and incidentals was $69 for the Boston area.[1] If anything, the $238 per day sought for the subsistence costs could be considered low; it is certainly a reasonable amount given the general cost of living in the Boston area.

Defendant cites to no authority for its proposition that having two witnesses testify to liability necessarily means that costs cannot be taxed as to both of them, and in this instance Plaintiff's experts were not cumulative and each expert testified to a different theory. Mr. Panish, an expert on doors, provided relevant testimony as to the consequences of failing to perform maintenance on the door's closing. Dr. Cushing, drawing from his decades of experience as a naval architect and engineer, testified as to the feasibility and necessity of having a handrail next to the women's bathroom door at issue in this case.

Defendant also argues that Mr. Patrick Mason, who testified briefly in order to authentic videos of the doors on Defendant's vessel, would not have been needed had his identity been disclosed. Defendant's argument as to Mr. Mason's identity is without merit. The Mason Group videos were timely disclosed, and indeed were relied upon by Defendant's experts. Correspondence was sent to Defendant indicating the videos were from the Mason Group. During the mandatory pre-trial disclosure of witnesses, Plaintiff explicitly named "Patrick Mason" as a

---

[1] https://www.gsa.gov/travel/plan-book/per-diem-rates/per-diem-rates-lookup/?action=perdiems_report&state=MA&fiscal_year=2018&zip=&city=Boston.

witness.  At no point prior to the pre-trial disclosure did Defendant seek to confirm the identity of Mr. Mason.  Nonetheless, Defendant filed a motion *in limine* seeking to exclude the videos taken by Mr. Mason.  The Court denied the motion, and at no point subsequent to the motion being denied did Defendant ever once indicate it was willing to stipulate to Mr. Mason's videos being introduced into evidence, thus necessitating Plaintiff calling Mr. Mason to actually appear at trial.

**VI.   Conclusion**

For all the foregoing reasons, all of Plaintiff's costs should be taxed.

Dated: March 13, 2019

Respectfully submitted,

Plaintiff's Counsel

By: /s/ Shannon Pennock
Pennock Law Firm LLC
*Pro Hac Vice*
411 Lafayette Street, 6th Floor
New York, NY 10003
(551) 200-6352
Fax: (929) 235-7273
shannonpennock@pennocklawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2019, that a true and correct copy of the foregoing document was served upon counsel of record by electronic mail through the U.S. District Court, District of Massachusetts, electronic case filing system.

**PENNOCK LAW FIRM, LLC**

By: /s/ Shannon Pennock
Pennock Law Firm LLC
*Pro Hac Vice*
411 Lafayette Street, 6th Floor
New York, NY 10003
(551) 200-6352
Fax: (929) 235-7273